# In the United States Court of Federal Claims
No. 08-700C

(Filed:  June 19, 2015)

_____
)
JAY ANTHONY DOBYNS,                        )
)
                          Plaintiff,       )
)
v.                                         )
)
THE UNITED STATES,                         )
)
                          Defendant.       )
_____)

## OPINION AND ORDER

After the court issued its final opinion in this case, an ATF agent, Trainor, left a voicemail message for the judge and said that he had been threatened by another witness, Higman, also an ATF agent, and that one of the Department of Justice (DOJ) lawyers who had tried the case before the court had further threatened Trainor with damage to his career if he disclosed the Higman threat to the court.  After that voicemail message, the court referred the matter to the Office of Professional Responsibility (OPR) within the DOJ.  See 28 C.F.R. § 0.39a (2015) (OPR is to "investigate and refer for appropriate action allegations of misconduct involving Department attorneys that relate to the exercise of their authority."), and voided the judgment, ECF No. 300.  OPR began an investigation but later suspended it when the special master was appointed to investigate whether there had been a fraud upon the court.  See Orders, ECF Nos. 329, 334, & 335.

The special master has ordered the government to produce certain documents related to the two threats.  See Order, ECF No. 353.  The government commendably has waived any privilege claim as to a majority of the relevant documents but contends that 90 documents in the custody and control of OPR and the Office of the Inspector General (OIG) are privileged from production.  The government is claiming that the documents are protected by the deliberative process, law enforcement, attorney-client, and work

product privileges, although it does not contend that all the documents are protected by all these privileges.

At their request, the parties have briefed the privilege issues.  Plaintiff filed his initial brief on May 20, 2015, ECF No. 382.  Defendant responded on June 2, 2015, ECF No. 396 (Def.'s Resp.), and plaintiff filed his reply on June 9, 2015, ECF No. 401.  On June 12, 2015, defendant completed its final production of documents.[1]

## I.   The Privileges Claimed

In support of its deliberative process and law enforcement privilege claims, the government has submitted the affidavits of Robin C. Ashton, Esq., Counsel for the DOJ OPR and the affidavit of Michael E. Horowitz, Inspector General for the DOJ.  In Ms. Ashton's declarations, she states:

> I have reviewed each of the OPR documents discussed below and have determined that the deliberative process privilege should be invoked to protect privileged information from disclosure.  I do so to prevent the release of predecisional, deliberative information, the disclosure of which might harm OPR's deliberative process by prematurely revealing OPR's recommendations and details about the investigative process.  Disclosure of predecisional discussions might harm OPR's deliberative process by chilling the free flow of advice, opinions, and recommendations among OPR attorneys and supervisors.  Release of this information could also cause public confusion by prematurely disclosing proposed actions or findings that might not ultimately be taken, and disclosing reasons and rationales that might not ultimately be adopted as the bases for OPR's final conclusions.

First Ashton Declaration at 2; Second Ashton Declaration at 2 (language identical).

She further states:

> I have reviewed each of the OPR documents listed below and have also determined that the law enforcement (investigative files) privilege should be invoked to protect privileged information from disclosure.  I do so to safeguard the privacy of individuals involved in the inquiry, and otherwise to prevent possible interference with the inquiry that might result from the disclosure of confidential information.  OPR's investigative process cannot be effective if those who provide OPR with documentary evidence or oral or written statements are concerned that the information they provide will be

---

[1] The issue of the production of documents related to the Rule 60 litigation team is discussed in Part V.C., infra.

made public.  Disclosing information contained in OPR's investigative files might inhibit OPR's ability to fulfill its mission of conducting thorough investigations and reaching correct determinations as to the merits of the misconduct allegations it is investigating.  Moreover, the premature disclosure of information about an ongoing OPR inquiry could harm an individual's reputation unfairly and needlessly.

Id.

Mr. Horowitz states:

I have reviewed the OIG documents listed below and have determined that the deliberative process privilege and/or the attorney-client privilege should be invoked to protect privileged information from disclosure.  I do so to prevent the release of predecisional, deliberative information, the disclosure of which might harm the OIG's deliberative process by chilling the free flow of advice, opinions, and recommendations among OIG staff and its attorneys and supervisors.

Horowitz Declaration at 2.

Defendant also claims the attorney-client and work product privileges as to some documents, arguing that "[c]ommunications between a Federal agency and agency counsel, as well as communications between a Federal agency and attorneys from the [DOJ] representing the agency in litigation, are included within the ambit of the privilege." Def.'s Resp. at 20 (citing Eden Isle Marina, Inc. v. United States, 89 Fed. Cl. 480, 495 (2009)).  Defendant asserts that "communications between counsel for the United States and employees of a Government agency are within the scope of the privilege." Id.  Defendant further argues that the attorney work product immunity applies to some documents that were prepared in anticipation of litigation.  Id.

II.     The Documents

I have reviewed in camera the documents claimed to be privileged which have been provided to me sometimes in redacted form.  Defendant represents that all redacted material is either nonresponsive or contains personally identifiable information, and I will accept that representation.  A party is not obliged to produce material that is not relevant to a claim or defense, Rule 26(b)(1) of the Rules of United States Court of Federal Claims (RCFC), and under RCFC 26(g)(1)(A), a discovery response is in itself a certification that it is "complete and correct as of the time it is made," RCFC 26(g)(1)(A).  I will therefore deem and credit the representation that the government has only redacted information that is not relevant to the remaining claim—the failure to

advise the court of the alleged threat to Trainor and the alleged threat to Trainor's career—and irrelevant personally identifiable information.[2]

The documents fall into several categories:  (i) documents submitted to or from lawyers whose behavior was being investigated; (ii) documents created by the OIG and the OPR who investigated the threats; (iii) documents from other persons who were familiar with or had investigated Trainor's allegations that he had been threatened; (iv) e-mails by lawyers in OPR and OIG to each other or to superiors; and (v) drafts created by the OPR or OIG lawyers of documents they were intending to send to persons outside of OPR or OIG, including the court.

Having reviewed the documents and Ms. Ashton's and Mr. Horowitz's declarations, I conclude that:

- The documents are not subject to the deliberative process privilege.  They are not documents produced during the consideration and adoption of a policy by an agency of the United States.  Instead, they were produced or created during the investigation of a particular matter—the alleged improper behavior of DOJ lawyers.  The deliberative process privilege does not apply to such documents.
- Assuming arguendo this privilege does exist, it protects only the recommendations, drafts, proposals and suggestions being made or created incident to the promulgation of a policy.  The privilege does not pertain to the facts memorialized or contained in an otherwise privileged document, unless those facts are inextricably intertwined with the recommendation being made.  That is not the situation here.  The facts in the documents, particularly the explanations provided by the DOJ attorneys for why they did not tell the court of the alleged threat, must be disclosed.
- Again assuming, arguendo, the privilege exists, it yields if the information sought to be protected is needed in the litigation or may shed light on a colorable claim of governmental misconduct.  Using the factors identified in the case law, I conclude that plaintiff has made a sufficient showing:  (1) of need and (2) of potential misconduct.  On balance, this combined showing of need and potential governmental misconduct outweighs the factors that would militate in favor of upholding the privilege claim.
- The law enforcement privilege does apply to the documents to which the government claims that privilege.  In certain instances, however, the weighing of the factors identified in the case law compels the conclusion that the law enforcement privilege should yield to the plaintiff's need for the document.  In other instances, the converse is true.  The document is either so innocuous or speaks of information now made public that plaintiff cannot show any need for it.

---

[2] If I am incorrect in that supposition, the government should correct me immediately.

In that situation, the interests advanced by the law enforcement privilege overwhelm the interest, if any, in disclosure of the information.

- The claim of attorney-client privilege must be rejected because there is no showing that the OPR or OIG documents reveal a communication from a client to an attorney made in confidence to secure legal advice or legal services.

- The work product privilege does not apply to the documents created by the OPR attorneys who neither prepared them for trial nor in anticipation of litigation.

III.    The Deliberative Process Privilege

A deliberative process privilege "protects agency officials' deliberations, advisory opinions and recommendations in order to promote frank discussion of legal or policy matters in the decision-making process." Zenith Radio Corp. v. United States, 764 F.2d 1577, 1580 (Fed. Cir. 1985) (citing Kaiser Aluminum & Chem. Corp. v. United States, 157 F.Supp. 939, 946 (Ct. Cl. 1958)).[3]

The Supreme Court has stated of the deliberative process privilege:

The cases uniformly rest the privilege on the policy of protecting the decision making processes of government agencies, and focus on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. The point, plainly made in the Senate Report, is that the frank discussion of legal or policy matters in writing might be inhibited if the discussion were made public; and that the decisions and policies formulated would be the poorer as a result. As a lower court has pointed out, there are enough incentives as it is for playing it safe and listing with the wind and as we have said in an analogous context, human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process.

N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (2001) (internal citations and quotation marks omitted).

---

[3] In Zenith, the Federal Circuit described the privilege as "executive privilege," and cited to the Court of Claims' description of the privilege in Kaiser. See Zenith Radio Corp., 764 F.2d at 1580 (citing Kaiser, 157 F.Supp. at 946). In doing so, the Federal Circuit reaffirmed the Court of Claims' recognition of the deliberative process privilege. See Abramson v. United States, 39 Fed. Cl. 290, 294 (1997) (noting that the Court of Federal Claims recognizes both privileges and discussing "[t]he view . . . consistent with binding precedent . . . that any assertion of the deliberative process privilege must be made in the context of an executive privilege"). See also First Heights Bank v. United States, 46 Fed. Cl. 312, 322 (2000).

To qualify, the documents therefore "must be (1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'"  Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995) (quoting Nat'l Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1117 (9th Cir. 1988)); Tigue v. United States Dep't of Justice, 312 F.3d 70, 76–77 (2d Cir. 2002) (deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" (quoting Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)).

To be pre-decisional, the document must have been prepared to assist an agency decision-maker in arriving at his decision.  Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999).  Indeed, the court should be able "'to pinpoint an agency decision or policy to which the document contributed.'"  Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. United States Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) (quoting Paisley v. CIA, 712 F.2d 686, 698 (D.C. Cir. 1981)).  The privilege therefore "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  The D. C. Circuit has stated:

> In deciding whether a document should be protected by the privilege we look to whether the document is "predecisional" whether it was generated before the adoption of an agency policy and whether the document is "deliberative" whether it reflects the give-and-take of the consultative process.  The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.  Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position.  To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency.

Id. at 866.

As to the requirement that the documents be "deliberative," they must be related to the process by which policies are formulated.  Grand Cent. P'ship, Inc., 166 F.3d at 482.  There must therefore have been a process of decision-making in which the information at issue played a role.  Id.  It is insufficient that the information was conveyed during a deliberative process.  Instead, the statement or document must have been a direct part of

the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.  Id.; accord Ethyl Corp. v. EPA, 25 F.3d 1241, 1248 (4th Cir. 1994); Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975) ("[P]re-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take of the deliberative process by which the decision itself is made.").

Documents are not deliberative when they are a compilation of facts discovered during an investigation.  To the contrary, when "purely factual material appear[s] in . . . documents in a form that is severable without compromising the private remainder of the documents," the factual information itself must be produced.  EPA v. Mink, 410 U.S. 73, 91 (1973) (superseded by statute on other grounds).  In Playboy Enterprises, Inc. v. Dep't of Justice, 677 F.2d 931, 933 (D.C. Cir. 1982), two Senators asked for a report on the handling of an FBI informant.  Playboy submitted a FOIA request for the report, and the DOJ tried to shield the entire report from disclosure pursuant to the deliberative process exemption.  Id. at 934.  The District Court held that the report was not exempt once the DOJ had excised conclusions, recommendations, opinions or advice of the authors.  Id. That decision was affirmed, and the Circuit, relying on the Mink case, held that the deliberative process privilege does not exempt from disclosure the factual portions of the report.  Id. at 936–37.  It is also true, of course, that "even purely factual information may be protected if 'the manner of selecting or presenting those facts would reveal the deliberative process, or if the facts are inextricably intertwined with the policy making process.'"  2 David M. Greenwald, Robert R. Stauffer, & Erin R. Schrantz, Testimonial Privileges, § 9.9 (2014 Ed.) (quoting Ryan v. Dep't of Justice, 617 F.2d 781, 790 (D.C. Cir. 1980)).

## A. The Deliberative Process Privilege Does Not Apply to the OPR or OIG Investigations

It is clear that neither the OPR nor the OIG were adopting a policy.  Ms. Ashton and her colleagues in that office were not, for example, in the process of creating a policy pertaining to under what circumstances DOJ lawyers were or were not to report events to a court.  They were conducting an investigation, upon referral by the judge in this case, into why the lawyers who may have been aware of the Higman threat did not report it to the court.  They were also collecting documents created contemporaneously with the alleged threats.  While there are drafts and e-mails by lawyers in the OPR which are necessarily antecedent to the reaching of a final conclusion, they are certainly not recommendations or analyses which speak to the adoption or rejection of a policy. Furthermore, the facts collected during the OPR investigation cannot possibly be said to reveal in themselves a deliberative process or to be so "inextricably intertwined" in the process that the disclosure of the facts would disclose the process.  That is impossible; there was no process occurring that looked towards the adoption or rejection of a policy now in existence.

The special master, when a magistrate judge, confronted an analogous situation in Waters v. United States Capitol Police Bd., 216 F.R.D. 153 (D.D.C. 2003).  In that case the Internal Affairs Division of the United States Capitol Police interviewed witnesses and then produced a report as to whether an officer was subject to racial discrimination when the officer was accused of cheating on an exam.  Id. at 155–56, 161.  In fact, there were two investigations of the cheating episode—one directed to whether the officer cheated and a second to whether the officer was subject to racial discrimination when the first investigation concluded that he had cheated.  Id.  The officer, who had by now brought suit against the Capitol Police, demanded the production of the report generated by the investigation into the officer's cheating.  Id. at 161.  The Capitol Police, however, withheld, on grounds of deliberative process, a memorandum said to "consist[] entirely of evaluative comments about an earlier report of investigation prepared by Sergeant Richard Burton pertaining to allegations that Mr. Waters [, the officer,] cheated on an exam."  Id. at 161–62 (quoting Declaration of Lieutenant Thomas Smith).  I rejected the deliberative process claim, however.  Id. at 162.  I quoted the cases discussed above and explained that the privilege pertains only to documents "reflecting advisory opinions, recommendations, and deliberations which contribute to the process by which governmental decisions and policies are formulated."  Id. at 162 (quoting Taxation With Representation Fund v. Internal Revenue Service, 646 F.2d 666, 677 (D.C. Cir. 1981)).  I then concluded, as to certain notes, as to which the Capitol Police also claimed privilege, that the privilege was inapplicable:

> As is self-evident, the application of this privilege to the investigators' notes, as described by Lieutenant Smith ("Smith"), is a poor fit.  Smith never claims that the notes taken during the interviews, interview questions, or annotations on documents constitute "opinions, recommendations and deliberations" that must be shielded lest inferiors in a government agency be inhibited in the advice they give their superiors or the public will be misled as to the reasons for the ultimate adoption of a particular policy.  Indeed, he never claims that they were created by persons who had the responsibility of recommending that a particular policy be adopted by the agency that employed them.

Id. at 162 (citation omitted).

I then turned to the four page memorandum described above and stated:

> While the application of the deliberative process privilege to the memorandum from Ziemba to Howe comes closer to the mark because it is at least directed by an inferior to a superior, it still misses.  Smith never indicates that Howe was considering any policy and sought Ziemba's views as to the wisdom of its adoption or that Ziemba, without Howe's direction, was proposing a policy for Howe to adopt.  Instead, Ziemba was speaking to a particular case and the deliberative process privilege to this point in its

history speaks to the adoption of a policy that pertains to all cases of a particular type.

Id. at 162–63.

As in the Waters case, the investigation conducted here relates to the collection of facts pertaining to a singular occurrence.  The analysis of those facts by OPR or OIG cannot possibly lead to the adoption or rejection of a policy.  The deliberative process privilege, therefore, does not apply.

In an earlier case, I reached a contrary conclusion.  While Emerson might defend me, I must admit that my decision was wrong.[4]

In McPeek v. Ashcroft, 202 F.R.D. 332 (D.D.C. 2001) the OPR, at the behest of the Attorney General, investigated complaints of sexual harassment and claimed the deliberative process privilege as to documents that set forth recommendations to the Attorney General as to what to do about those complaints.  I upheld the privilege, rejecting plaintiff's contention that the deliberative process privilege applies only to documents pertaining to the creation of policy.  Id. at 334–35.  As the case law discussed above indicates, the distinction between policy and action is fundamental; the privilege applies only to the creation of a policy and not to every agency action.  I was incorrect to equate the two.

Indeed, another magistrate judge reached the same conclusion that I reached in Waters.  In Velez v. City of New York, No. CV 2004-1775,  2010 WL 2265443 (June 2, 2010), there was an investigation into two police officers' interactions with a confidential informant, and the City of New York claimed the deliberative process privilege as to documents that it insisted "contain pre-decisional analysis and recommendations made by a supervisor to the Internal Affairs investigator assigned to the case."  Id. at *3.  The court, however, ruled that the documents did not qualify for the privilege because they were not related to a process that would culminate in the adoption or rejection of a policy. Id.  The court stated:

> A document is deliberative when it is actually . . . related to the process by which policies are formulated.  A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision.  The document must have been created to assist the agency in the formulation of a specific decision on policy rather than part of a routine and ongoing process of agency self-evaluation.  By contrast, measuring

---

[4] "A foolish consistency is the hobgoblin of little minds."  Ralph Waldo Emerson, Self Reliance.

compliance with existing procedures is not predecisional, and thus is not privileged.  These documents do not contain discussions underlying policy oriented judgments that the deliberative process privilege is designed to protect.  The final decision the City refers to is whether disciplinary action was warranted against the defendant officers based on their failure to follow the applicable procedures.  These recommendations concerning disciplinary review of a discrete incident do not involve the policy formulations protected under the deliberative process privilege.

Id. at *3–4 (internal citations and quotation marks omitted).[5]

Accordingly, the deliberative process privilege claim must be rejected.  This is not to suggest that OPR or OIG investigations should be conducted on the five o'clock news, particularly when such investigations can be generated by nothing more than a complaint and involve the hard-earned reputations of lawyers in the DOJ.  It is only to say that the application of the deliberative process privilege here would be a Procrustean fit and, as will be shown, the law enforcement privilege, a much better fit, does apply.

Nevertheless, assuming I am wrong, and the deliberative process does apply, it will now be shown that that privilege yields to plaintiff's need and to the claim of misconduct that caused the court to refer the matter to OPR.

   B.  Assuming it Applies, the Deliberative Process Privilege Yields to Plaintiff's Showing of Need

The deliberative process is a qualified privilege and can be overcome by a sufficient showing of need outweighing the harm that might result from disclosure.  The Ninth Circuit has summarized the factors to be considered in this balancing test as follows:

The deliberative process privilege is a qualified one.  A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure. Among the factors to be considered in making this determination are:  1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.

---

[5] Defendant cites several cases in which courts ruled that the deliberative process privilege did apply to documents generated during OPR investigations, namely Covertino v. United States, 674 F.Supp.2d 97 (D.D.C. 2009); Heller v. Marshalls Service, 655 F.Supp. 1088 (D.D.C. 1987); and Lewis v. United States, 867 F.Supp.2d 1 (D.D.C. 2011).  However, those decisions contain no analysis or acknowledgement of the requirement that the process must actually be in pursuit of policy creation, and thus are not persuasive.

FTC v. Warner Commc'ns, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984) (internal citations and quotation marks omitted).[6]

Applying those well-recognized factors compels the conclusion that the deliberative process must yield.

First, the documents are unquestionably relevant to the government and its roles in this litigation (Factors 1 and 3).  They speak, after all, to the precise question presented: when did the DOJ lawyers learn of the alleged threat, why did they not inform the court that there was such an allegation, and did they threaten Trainor's career?

As to the OPR and OIG investigations, there is no substitute for the documents that were created during the course of those inquires.  Therefore, under that factor (Factor 2) and the documents' obvious relevance, plaintiff's showing is a compelling one.

Additionally, while it is not denominated as one of the factors in the case quoted above, it surely is of significance that this is serious litigation involving a specific claim of witness intimidation by lawyers for the United States that lead a judge to require an investigation by a special master.

As to the final factor (Factor 4), there is a remote possibility that disclosing what OPR learned in the investigation might make DOJ lawyers less candid when OPR demands an explanation from them for their behavior in a given case.  But, it is fanciful to think that DOJ lawyers will be timid or less than candid in answering OPR demands for information when the lawyers know that their careers may be on the line if they refuse to do so, even if there is eventual public disclosure of what they have told OPR.  See also 28 C.F.R. § 45.13 (2015) (requiring DOJ employees to cooperate fully with investigations by the OPR).

Furthermore, the OPR inquiry was a response to a judge demanding to know why DOJ lawyers had done what they did.  DOJ's lawyers surely had to know that whatever they told the OPR would eventually be made known to the court when they or OPR told the court.  It is inconceivable that they thought that by answering the OPR inquiries they

---

[6] Accord In re Sealed Case, 121 F.3d 729, 737–38 (D.C. Cir. 1997) ("The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need.  This need determination is to be made flexibly on a case-by-case, ad hoc basis.  '[E]ach time [the deliberative process privilege] is asserted the district court must undertake a fresh balancing of the competing interests,' taking into account factors such as 'the relevance of the evidence,' 'the availability of other evidence,' 'the seriousness of the litigation,' 'the role of the government,' and the 'possibility of future timidity by government employees.'"  (quoting In re Subpoena Served Upon the Comptroller of the Currency, 967 F.2d 630, 634 (D.C. Cir. 1992))).

were producing information that would be held forever in confidence by OPR when a federal judge had referred the matter to OPR in the first place. They could not have been that naïve.

Finally, it is an honor for any lawyer to represent the United States, but the job necessarily comes with the concomitant responsibility to explain one's conduct to OPR or a presiding judge, or both. To say that DOJ lawyers will be less than frank and forthcoming when they answer OPR's questions, occasioned by a judge's demand that OPR investigate what those lawyers did, because they fear public disclosure of their explanations, is to demean their integrity.

Accordingly, I find that the balancing of these factors requires the conclusion that the need for the information outweighs by a substantial margin the need for further secrecy and, if the deliberative process exists, it must yield.

C.  Misconduct

The deliberative process privilege also yields when there is reason to believe that the documents claimed to be privileged may shed light on the government's misconduct. Texaco Puerto Rico, Inc., 60 F.3d at 885; In re Sealed Case, 121 F.3d 729, 738 (D.C. Cir. 1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'" (quoting Texaco Puerto Rico, Inc., 60 F.3d at 885)). Moreover, if such misconduct is present, there is no other factor to be weighed against disclosure; disclosure is ordered. In re Sealed Case, 121 F.3d at 746 ("[T]he privilege disappears altogether when there is any reason to believe government misconduct occurred."); Alexander v. F.B.I., 186 F.R.D. 170, 177 (D.D.C. 1999).

In 2013, then District Court and now Circuit Judge Wilkins concluded that the misconduct "must be severe enough to qualify as nefarious or extreme government wrongdoing." Neighborhood Assistance Corp. v. U.S. Dep't of Housing and Urban Development, 19 F. Supp. 3d 1, 14 (D.D.C. 2013). The court cited as examples the kind of misbehavior that would invoke the exception—acts that no government should engage in, such as misuse of a personnel file to discredit a witness in an ongoing investigation of a Presidential administration; using the Internal Revenue Service to "get" a President's enemies; and withholding documents that would tend to show religious discrimination. Id. at 14 (citing Alexander, 186 F.R.D. at 164; Tax Reform Research Grp. v. IRS, 419

F.Supp. 415, 426 (D.D.C. 1976); <u>Chaplaincy of Full Gospel Churches v. Johnson</u>, 217 F.R.D. 250, 256–58 (D.D.C. 2003)).[7]

In this case, the court found that a witness who had given detailed testimony about the failures of the ATF to protect a former agent, thereby harming the government's case, may have been threatened with damage to his career if he told that he had been threatened.  While the truth of that assertion is yet to be tested, if true, it may constitute the crime of obstruction of justice.  Moreover, it was the judge himself who initiated the investigation of these events to see if they warranted setting aside a final judgment. Surely that allegation, which the judge determined to be serious enough to warrant extraordinary action, can be said to be alleged "nefarious" misconduct if that is in fact the standard.

The deliberative process privilege does not apply to any of the documents reviewed.

IV.    The Law Enforcement Privilege

The law enforcement privilege may protect documents created during an investigation by law enforcement such as the DOJ.  In <u>McPeek</u>, 202 F.R.D 332, I ruled that the law enforcement privilege applies to "an investigation conducted by OPR into allegations of misconduct which OPR has jurisdiction to investigate."  <u>Id.</u> at 335–36 (citing <u>Tuite v. Henry</u>, 181 F.R.D. 175, 176 (D.D.C. 1998), <u>aff'd</u>, 203 F.3d 53 (D.C. Cir. 1999).  I persist in that view and again conclude that documents produced or considered during an OPR investigation are protected by the law enforcement privilege.

But, once again, the privilege is a qualified one and must yield when the factors identified in cases such as <u>Tuite v. Henry</u>, 98 F.3d 1411, 1417 (D.C. Cir. 1996) are applied to balance the public interest in nondisclosure against the requesting party's need for the information.  Those factors are:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in

---

[7] In <u>Waters</u>, the special master, then a magistrate judge, found it inconceivable that the deliberative process privilege should shield from discovery documents bearing on whether an agency engaged in discrimination.  <u>Waters</u>, 216 F.R.D. at 163.

question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

Tuite v. Henry, 98 F.3d at 1417 (citing In re Sealed Case, 856 F.2d 268, 272 (D.D.C. 1988)).

First, regarding the last two factors (Factors 9 and 10), the information is important to plaintiff, and obviously is not available from any other source.[8]

Second, regarding frivolousness (Factor 8), plaintiff's lawsuit has been successful to date.

Third, I see no potential harm from the "disclosure" of the names of the persons who have given information to OPR (Factor 2). These persons are agents and employees of DOJ or the ATF or lawyers who have participated in the trial of this matter before the court. Their identities are hardly a secret. And, as I have already explained, I see no risk that in the future, DOJ lawyers will be reluctant to cooperate with the OPR if the OPR investigative materials are disclosed (Factors 1 and 3).

Fourth, the information sought is factual, not evaluative (Factor 4). Plaintiff wants to know what the DOJ has learned about the alleged threat and how they responded to it.

Fifth, while the OPR investigation may continue once the special master makes his findings, and the court rules, whether the attorneys acted consistently with their professional responsibilities is for OPR and not for me to decide (Factors 6 and 7). Assuming I ultimately make findings about what they knew and when they knew it, I will be speaking only as to whether what I found justifies setting aside the judgment. I have neither interest in nor authority to recommend their being disciplined. Moreover, I know of no reason why my findings would have to be given any dispositive effect, particularly when I have no intention of speaking to the issue of their discipline.

Thus, a balancing of the appropriate factors compels the conclusion that, in general, the law enforcement privilege, while applicable, may yield to plaintiff's need for the document. On the other hand, there are certain obvious instances where the information in the document is innocuous and insignificant because, for example, it is now public information. In those instances, plaintiff cannot show any need for the

---

[8] Plaintiff is not a defendant in a criminal case, and the special master is unaware of any risk of his turning out to be a defendant following from this matter (Factor 5).

document, let alone a substantial one.  I note here that some of the documents contain the OPR lawyers' ratiocination as to how to respond to Judge Allegra, which is utterly irrelevant to the question presented—the alleged threats to Trainor.  Given their irrelevance, their disclosure would be a gratuitous invasion of the lawyers' thinking for no good reason.  Therefore, I will exercise my discretion and allow defendant to withhold, under claim of law enforcement privilege, the OPR documents dealing with how to respond to Judge Allegra.

At the conclusion of this opinion, I will identify each document as to which the law enforcement privilege applies.

V.      The Attorney-Client Privilege and the Work Product Doctrine

I have already resolved the claims of the applicability of the deliberative process and law enforcement privileges, so I now turn to the remaining claims of the attorney-client and work product privileges.

The attorney-client privilege protects from disclosure communications made in confidence by a client for the purpose of securing legal advice or legal services.  See Banks v. Office of the Senate Sergeant-at-Arms, 222 F.R.D. 1, 3 (D.D.C. 2004); see also Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  Rule 26 (b)(3)(A), building on the seminal Supreme Court decision in Hickman v. Taylor, 329 U.S. 495 (1947), protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial" by a party or its attorney.  RCFC 26(b)(3)(A).

This case is, of course, still in active litigation.  There have been two distinct stages of litigation to date:  (1) the hearings before the court; and (2) the post-judgment or Rule 60 proceedings.  Additionally, as explained earlier in this opinion, there was an investigation by the OPR into the behavior of the attorneys who represented the United States during the first phase of the litigation, denominated (1) above, the hearings before the court, and who learned of the threat to the witness Trainor but did not bring it to the Judge's attention.

Understandably, the defendant makes it clear that it is not claiming that documents created during the OPR investigation are cloaked directly with the attorney-client or work product privileges.  Instead, the privileges are claimed derivatively as to documents created by OPR but reflecting communications that were uttered or came into existence during the hearings before the court when Trainor revealed to his superiors that he had been threatened.  ATF relayed that information to the DOJ attorneys who were trying the case, and those attorneys decided not to advise the judge of the threat.  See Def.'s Resp. at 21.

15

A.   The Attorney-Client Privilege

According to the defendant's log, there are 28 documents of the 90 total as to which defendant claims the attorney-client privilege.  I have reviewed the documents, the log, and the declarations of Robin C. Ashton and Michael E. Horowitz.[9]  While the log claims the privileges, it only occasionally explains why these two privileges apply to the documents.  Nevertheless, it appears from defendant's descriptions in the log (when they do appear) that it seems to consider the communications about the Higman threat to be protected by the attorney-client privilege.  Indeed, there can only be two kinds of communications after Trainor discloses the threat that can be considered communications from a client: communications from Trainor and from the attorneys for the ATF about the threat.

In general, the courts recognize that attorneys for a government entity may have an attorney-client relationship with the entities they represent.  E.g., Eden Isle Marina, Inc., 89 Fed. Cl. 480.  In this case, the DOJ represented the ATF.  But, that principle is of little help in this case when, in analyzing communications by Trainor, one tries to identify who the client was, who the DOJ attorneys involved represented, and whether any of the communications by Trainor were confidential.

The documents already produced to plaintiff and provided to the special master indicate that Trainor spoke to his superiors about the Higman threat, demanding that they investigate it, and to an ATF lawyer about whether Trainor had any obligation to report the threat to the court.  Trainor also spoke to DOJ attorneys about whether to report the threat to the court.  The documents indicate that Trainor did not communicate in confidence to any attorney, whether employed by ATF or DOJ, that he had been threatened.  To the contrary, he spoke openly of the threat to his superiors and demanded that they investigate.  His communication to the ATF lawyer, who understandably communicated what she had been told to the DOJ attorneys, does not seem to have been in confidence.  Indeed, the ATF lawyer would not have shared the message if she thought that Trainor had confided in her with the expectation that she keep the matter a secret.  To the contrary, Trainor wanted action—investigate his complaint of being threatened, and advice—whether to tell the court.  While he sought legal advice, he certainly did not seek it on the basis of a communication only with his lawyer that he expected would never be disclosed. Why would the law protect such a communication when the putative client, Trainor, never considered it confidential and to be kept secret by an ATF or DOJ lawyer? In fact, Trainor wanted the Higman threat disclosed, and he ultimately did disclose it to the court.  Thus, the information defendant seeks to claim as privileged—that Trainor

---

[9] Ms. Ashton speaks only to why the documents are privileged under the deliberative process and law enforcement privileges, presumably because only these privileges require the assertion of the privilege to be made by the head of an agency.

wanted the threat investigated and to know whether he should tell the court about it—is already known to plaintiff.

Furthermore, it is inconceivable that any DOJ lawyer ever considered Trainor his or her client when they learned of the threat.  Indeed, they had treated Trainor as a hostile witness at the hearing before the court.  Had anyone told the DOJ lawyers that they were Trainor's lawyers on the day they learned that he claimed to have been threatened by Higman, they would have been flabbergasted.  An examination of the documents created after Trainor claimed to have been threatened shows that the relationship between Trainor and the DOJ lawyers was frequently antagonistic and adversarial.

With these general concerns in mind regarding the applicability of the attorney-client privilege, I have reviewed all of the documents as to which the government claims an attorney-client privilege.  I have concluded that in each instance the unspoken premise of the claim is that the client was Trainor and that his statements, if uttered to an attorney, were privileged.  As just explained, I reject that premise and overrule these claims of the attorney-client privilege.

There are also OIG documents for which defendant claims attorney-client privilege, but defendant provides no explanation in the log as to who is the attorney and who is the client in those communications.  Those claims of attorney-client privilege are also rejected.

B.   The Work Product Doctrine

Defendant claims the work product protection as to 24 documents of the 90 documents over which defendant asserts privileges.  The work product doctrine is also inapplicable to the documents I have reviewed.  I have described the work product privilege as follows:

> Rule 26(b)(3) of the Federal Rules of Civil Procedure provides that materials prepared in anticipation of litigation or for trial by an attorney or a party are protected from disclosure and they may be subject to discovery only upon a showing of substantial need and the inability to obtain the substantial equivalent without undue hardship.  The court must take particular care to protect the mental impressions, conclusions, opinions, or legal theories of an attorney.  Attorney mental impressions, conclusions, opinions, and legal theories may be reflected in interviews, statements, memoranda, correspondence and in countless other tangible and intangible ways.  These materials, known as opinion work product, are entitled to special protection and require a stronger showing of necessity to justify release . . . although the precise contours of this showing have not been resolved.

<u>Miller v. Holzmann</u>, 238 F.R.D. 30, 32 (D.D.C. 2006) (internal quotation marks and citations omitted).

> It follows then that there are in effect two forms of work product.  Any material prepared by an attorney in anticipation of litigation qualifies as work product but the protection may yield to a showing of a substantial need and an inability to secure the equivalent without undue hardship.  But, if the material constitutes or contains mental impressions, conclusions, opinions, or legal theories of an attorney, a much greater showing is necessary.

<u>Miller v. Holzmann</u>, No. 95-01231, 2006 WL 3500877, at *1 (D.D.C. Dec. 5, 2006) (citing <u>Upjohn Co.</u>, 449 U.S at 400–01).

In the traditional case, documents created by counsel for the parties in which the lawyers discussed, for example, how to cross examine a witness or how to respond to a judge would be classic work product—documents prepared for trial and disclosing the "mental impressions, conclusions, opinions or legal theories" of counsel.  <u>See</u> Rule 26 (3)(B).  Yet, applying the prohibition to the documents created by OPR is again a poor fit.

The seminal case of <u>Hickman v. Taylor</u>, 329 U.S. 495, dealt with one lawyer attempting to secure from opposing counsel notes counsel had taken during a witness interview.  The Supreme Court considered that effort intolerable because the societal interest in an effective advocacy system would be seriously retarded if a lawyer could not prepare her case in peace, without the intrusion of opposing counsel into her thoughts, opinions, and conclusions.  <u>Id.</u> at 510–11.

That is not the situation here.  The OPR lawyers were not representing the United States in the same sense as the lawyers who have and are now representing the United States in this case.  As I will make clear in rejecting plaintiff's efforts to secure the work product of the attorneys who presently represent the United States, <u>see</u> Part V.C. <u>infra</u>, I consider that work product inviolate.  But, the OPR lawyers are not representing the United States in this litigation.  Instead, they are performing a public function upon the referral by a judge.  Intrusion into their mental processes does not threaten effective advocacy in the manner in which the intrusion condemned in <u>Hickman v. Taylor</u> did.  These lawyers, after all, were not representing a party in any litigation before this or any other court.

Moreover, the deliberations and mental processes of the OPR lawyers are already more correctly protected by the law enforcement privilege.  I am hard pressed to understand why, unlike any other lawyer or client, the OPR lawyers are entitled to the simultaneous protection of two privileges when the two privileges protect the same interest in preventing the public disclosure of the ratiocination of lawyers who are

18

performing different tasks—trying a case and conducting an investigation.  I therefore conclude that the work product privilege does not apply to any document I have reviewed.

### C.   The Rule 60 Litigation Team Documents

Plaintiff makes an unprecedented demand that the lawyers who now represent the United States, and who undertook that representation when the court disqualified the other lawyers who had represented the United States, produce for him all their work. Their work is clearly protected by the work product doctrine, a protection afforded since at least the decision in Hickman v. Taylor, which is now incorporated into Rule 26.

Moreover, defendant argues correctly that the documents generated by the Rule 60 litigation team are fundamentally different than those subject to discovery when they were generated "solely for the purpose of defending against a series of allegations separate from plaintiff's claims against ATF." Def.'s Resp. at 33. Those documents "are not first-hand evidence of underlying facts and have no direct connection to the conduct of the attorneys who participated in the underlying litigation." Id. That is certainly true.

I appreciate that the discovery order requires the parties to exchange all documents that "pertain, relate to, document, or explain the behavior of DOJ or ATF employees with reference to the threat, whether before or after the threat was made" and further provides that "[t]his includes any investigation into that matter conducted by either DOJ or ATF at any time." Order at 1, ECF No. 353. But, the order in context only referred to the documents created by those who heard of the threat(s) when they were uttered or later investigated their being made when the court referred the matter to OPR. It is absurd to interpret the language to have divested the lawyers who presently represent the United States of their work product protection. Such an interpretation would be ultra vires and a gross violation of the rule announced in Hickman v. Taylor. I assure the parties that I had no such intention, and I hereby amend the order to include the following caveat: "This includes any investigation into that matter conducted by either DOJ or ATF at any time, except for any documents created or considered by the attorneys who presently represent the United States."

### VI.    Conclusion

I have concluded that the deliberative, attorney-client, and work product privileges do not apply to the documents claimed to be privileged. I have also concluded that the law enforcement privilege is applicable but that it yields in certain instances to plaintiff's showing of need. When it does not yield, that privilege bars disclosure.

As to the following documents, I find that they are innocuous and insignificant because, for example, they speak of information that is now public.  Thus, documents with the following Bates number ranges are protected by the law enforcement privilege:

DOJ_OPR00000260 to DOJ_OPR00000262
DOJ_OPR00000483 to DOJ_OPR00000486
DOJ_OPR00001219 to DOJ_OPR00001220
DOJ_OPR00001226 to DOJ_OPR00001227
DOJ_OPR00001228 to DOJ_OPR00001229
DOJ_OPR00001230 to DOJ_OPR00001231
DOJ_OPR00001237 to DOJ_OPR00001238
DOJ_OPR00001249 to DOJ_OPR00001249
DOJ_OPR00001250 to DOJ_OPR00001251
DOJ_OPR00001252 to DOJ_OPR00001253
DOJ_OPR00001263 to DOJ_OPR00001265
DOJ_OPR00001279 to DOJ_OPR00001280
DOJ_OPR00001281 to DOJ_OPR00001281
DOJ_OPR00001282 to DOJ_OPR00001283
DOJ_OPR00001284 to DOJ_OPR00001285
DOJ_OPR00001286 to DOJ_OPR00001287
DOJ_OPR00001288 to DOJ_OPR00001289
DOJ_OPR00001296 to DOJ_OPR00001298
DOJ_OPR00001332 to DOJ_OPR00001333
DOJ_OPR00001359 to DOJ_OPR00001359

Thus, with the exception of the documents just listed, all other claims of privilege are overruled and the defendant shall produce the remaining documents to the plaintiff on or before **June 26, 2015**.

IT IS SO ORDERED.

s/John M. Facciola
JOHN M. FACCIOLA
Special Master