# In the United States Court of Federal Claims

No. 08-700C

(E-Filed: July 1, 2021)

| | |
|---|---|
| JAY ANTHONY DOBYNS, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Motion for attorneys' fees and costs; RCFC 54(d); Equal Access to Justice Act; 28 U.S.C. § 2412. |

James B. Reed, Mesa, AZ, for plaintiff. Carson T.H. Emmons, of counsel.

Martin F. Hockey, Jr., Deputy Director, with whom were Jeffrey Bossert Clark, Acting Assistant Attorney General, and Robert E. Kirschman, Jr., Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge.

On October 30, 2020, plaintiff filed a motion for attorneys' fees and costs pursuant to Rule 54(d) of the Rules of the United States Court of Federal Claims (RCFC) and the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. See ECF No. 573. Defendant filed its response on December 14, 2020, see ECF No. 574, and plaintiff filed a reply on February 1, 2021, see ECF No. 579.

Briefing is now complete, and the motion is ripe for decision. The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, plaintiff's motion for attorneys' fees and expenses is **DENIED**.

I.      Background

Plaintiff filed his complaint in this court on October 2, 2008, and filed an amended complaint on May 15, 2009.  See ECF No. 1 (complaint); ECF No. 17 (second amended complaint).  Therein, plaintiff alleged that the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) breached a settlement contract with plaintiff by failing to adequately protect plaintiff and his family from threats related to the undercover work plaintiff performed while an agent with the ATF.  See ECF No. 17 at 6-12, 36-39.  Defendant filed a counterclaim against plaintiff, alleging that he abused his position with the ATF by selling the story of his tenure as an agent for personal gain and in so doing violated various federal laws and regulations and breached the parties' settlement agreement.  See ECF No. 35 at 29-33 (defendant's answer and counterclaim).

In 2013, the court held a trial in this case, after which it determined that "there was no express breach of the settlement agreement [ ], but that defendant's conduct associated with that agreement effectuated a breach of the covenant of good faith and fair dealing."  ECF No. 293 at 2 (September 16, 2014 opinion, reported at Dobyns v. United States, 118 Fed. Cl. 289 (2014)).  The court found that plaintiff was entitled to only emotional distress damages in the amount of $173,000.  See id. at 2, 53.  The court further held that defendant's counterclaim was meritless.  See id. at 2.

The parties both appealed the court's ruling to the United States Court of Appeals for the Federal Circuit, which affirmed the ruling in part, and reversed it in part, on February 6, 2019.  See ECF No. 560 (Circuit opinion, reported at Dobyns v. United States, 915 F.3d 733 (Fed. Cir. 2019)); see also ECF No. 561 (mandate issued on May 1, 2019).  On May 1, 2019, the same day the Circuit issued its mandate, the court issued an order directing the parties to file a joint status report "indicating what, if any, issues need to be addressed before this case is terminated."  ECF No. 562 at 1.

The parties filed the joint status report on May 15, 2019.  See ECF No. 563.  Therein, plaintiff informed the court that he intended to appeal the Circuit's ruling to the Supreme Court of the United States, and stated that "[g]iven plaintiff's intention to petition for a writ of certiorari, the parties agree that there are no activities for them to undertake at the trial court level at this time, or for the [c]ourt to adjudicate."  Id. at 2.  Plaintiff also noted his intention to file several motions, including a motion for attorneys' fees, after proceedings before the Supreme Court concluded.  See id. at 2-3.

After considering this joint status report, on May 15, 2019, the court issued an order acknowledging both plaintiff's plan to pursue relief from the Supreme Court and his intention "to file multiple motions at the trial court level once proceedings at the [Supreme Court] have been resolved."  ECF No. 564 at 1.  The court directed the parties to "file a joint status report within sixty days of the final resolution of plaintiff's request

2

for relief from the Supreme Court, indicating their proposed schedule for further proceedings in this matter." Id. (emphasis omitted).

On April 24, 2020, the parties filed a joint status report in which they informed the court that the Supreme Court had denied plaintiff's petition on February 24, 2020. See ECF No. 565 at 2. Plaintiff stated his position that the "Supreme Court's denial of [p]laintiff's petition was not final until March 21, 2020,[1] following twenty-five days in which [p]laintiff possessed the right to file a petition for rehearing." Id. Plaintiff also restated his intention to file multiple motions, including a motion for attorneys' fees. See id. at 3. Plaintiff explains that defendant has taken the position that such a motion would be untimely and argues that defendant is wrong and unfairly misled plaintiff as to when the deadline for filing would pass. See id.

According to plaintiff, he relied on an email exchange with defendant's counsel, that took place in connection with preparing the parties' April 24, 2020 status report, in determining when to file the motion for attorneys' fees. See id. at 4. On April 8, 2020, plaintiff's counsel wrote, in relevant part, as follows:

> EAJA has a thirty day window, but Judge Campbell-Smith's determination of a scheduling order can supersede that, and in any event, would not close until thirty days following entry of a proper correct and final judgment. I do not perceive us as having that, for the reasons stated.
>
> Please advise as to your position on this, because if I need to file a motion for clarification or some other form of relief during the sixty day period, I would like to do so this week.

Id. In response, defendant's counsel noted, in relevant part: "I don't think we need to ask the trial court to issue a new judgment, it will do that as a matter of course." Id. at 5. After receiving this response, plaintiff's counsel reiterated his concern in an email to defendant's counsel on April 22, 2020, stating: "By the way, while I know you believe that Judge Campbell-Smith will automatically issue a new form of judgment, her May 2 2019 Order suggested that she was just going to terminate the case without further action." ECF No. 574 at 63.

---

[1]    In plaintiff's opening brief he states that the Supreme Court's decision was final on March 21, 2020. See ECF No. 573 at 39. Defendant cites the same date in its response. See ECF No. 574 at 21. It appears to the court that both parties initially failed to account for the fact that February 2020 had twenty-nine days. As plaintiff correctly notes in his reply, twenty-five days from February 24, 2020, was March 20, 2020. See ECF No. 579 at 20.

3

Despite this exchange, prior to filing the joint status report, defendant informed plaintiff that it considered a motion for attorneys' fees to be untimely. See ECF No. 565 at 5. According to plaintiff:

> The Department of Justice committed in writing that a new judgment would have to be issued, and that the Court of Federal Claims would do so automatically, and therefore that no such request or clarification need be made. Upon the issuance of an amended judgment, a new sixty-day appeal period would begin regarding the language of the judgment, at the conclusion of which the thirty days in which to file an EAJA application would commence. Now, instead, the [g]overnment takes the position that Plaintiffs' EAJA application is untimely. The [g]overnment's position with respect to the timeliness of an EAJA application in response to the issuance of an amended judgment by this [c]ourt is wrong, waived, estopped, and inappropriate. Private parties and their counsel should be able to rely on representations made by the United States' attorneys.

Id. at 5-6.

Defendant, for its part, stated that "[t]he [g]overnment considers this case to be finally decided," but declined to engage with plaintiff on the timeliness arguments in the joint status report. Id. at 7. Instead, defendant noted that it "anticipate[s] any questions about the timeliness of any of [p]laintiff's proposed actions will be the subject of future briefing." Id. at 8.

On May 4, 2020, the court entered an order in response to this joint status report in which it stated as follows:

> The court declines to enter the schedule as proposed. Because the Federal Circuit affirmed in part and reversed in part this court's August 25, 2014 opinion, but did not remand the case for further proceedings, the court will not enter an amended judgment. The mandate issued by the Federal Circuit operates to alter the judgment previously entered by this court. As such, the parties must propose dates certain for filing the anticipated motions, responses, and replies.

ECF No. 566 at 1-2.

On May 18, 2020, the parties filed a joint status report proposing a schedule to govern "any and all post-appeal motions" the plaintiff wished to file. See ECF No. 567 at 1. The court adopted the proposed schedule on May 20, 2020. See ECF No. 568 at 2. After moving for a number of enlargements of time, see, e.g., ECF No. 569, ECF No.

4

571, ECF No. 575, the parties have now completed briefing on the motion for attorneys' fees.

II.     Legal Standards

As a general rule, plaintiffs may not recover attorneys' fees from the United States. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983). The EAJA creates an exception to this general rule, and under certain circumstances, also allows for recovery of costs. See 28 U.S.C. § 2412(a)(1). The statute provides, in relevant part, as follows:

> (a)(1)  Except as otherwise specifically provided by statute, a judgment for costs . . . may be awarded to the prevailing party in any civil action brought by or against the United States . . . in any court having jurisdiction of such action.
>
> . . .
>
> (b)  Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . in any court having jurisdiction of such action.
>
> . . .
>
> (d)(1)(A)  Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
>
> (B)  A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record

5

(including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

. . .

(2) For the purposes of this subsection—

. . .

(G) "final judgment" means a judgment that is final and not appealable, and includes an order of settlement.

28 U.S.C. § 2412(a)(1), (b), (d)(1)(A) and (B), (d)(2)(G).

Because subsections (a) and (b) of the EAJA do not include a specific time limitation for requesting costs and fees, the court applies the time limitation in the court's rule addressing the same. Rule 54(d)(1)(B)(i) requires that a bill of costs, as allowed pursuant to 28 U.S.C. § 2414(a), must "be filed within 30 days after the date of final judgment, as defined in 28 U.S.C. § 2412(d)(2)(G)." See Bratcher v. United States, 138 Fed. Cl. 543, 548 (2018) (applying the thirty-day deadline set forth in RCFC 54(d)(1)(B) to a claim for costs made pursuant to 28 U.S.C. § 2412(a)); Kansas Gas & Elec. Co. v. United States, 111 Fed. Cl. 169, 172 (2013) (holding that plaintiff's request for costs pursuant to 28 U.S.C. § 2412(a) was "clearly out of time" when it was filed five days after the thirty-day deadline articulated in RCFC 54); First Fed. Sav. & Loan Ass'n of Rochester v. United States, 88 Fed. Cl. 572, 593 (2009) (noting that "RCFC 54(d)(1) refers specifically to 28 U.S.C. § 2412(a) and § 2412(d)(2)(G), provisions of the EAJA, making clear that one of the motivations behind RCFC 54(d)(1) was to synchronize the timing rules of the Court of Federal Claims with respect to recovery of fees and costs with the timing rules of the EAJA.").

Rule 54(d)(2)(B)(i) reiterates the thirty-day filing deadline with regard to a motion for attorneys' fees. See Heger v. United States, 114 Fed. Cl. 204, 208 (2014) (stating that "the relevant window for filing a motion for attorneys' fees under [s]ubsection 2412(b) is derived from RCFC 54(d), not a statute, and is a 30-day period commencing after the judgment is no longer appealable").

The thirty-day deadline may, in cases of excusable neglect, be extended. See Kansas Gas, 111 Fed. Cl. at 173. The court has persuasively defined the standard for excusable neglect with reference to the analysis from the Supreme Court in Pioneer Investment Services Co. v Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993). See id. This court explained that the Supreme Court "specifically determined that the reach of the concept [of excusable neglect] 'is not limited strictly to omissions caused by

circumstances beyond the control of the movant,' although it noted that 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.'" Id. (quoting Pioneer, 507 U.S. at 392). The factors this court considers, derived from Pioneer, include: the reason for the delay, prejudice to defendant, threat to efficient judicial administration, and bad faith. See id. While this court noted that in some cases "inadvertent delays" may qualify as excusable neglect, in order to make such a finding, the party seeking the extended deadline must show "something more" than a "simple mistake" or "garden-variety miscalculation." See id. at 173, 175.

III.   Analysis

Plaintiff's request for attorneys' fees and costs is made pursuant to "the Equal Access to Justice Act (28 U.S.C. § 2412(a), (b), and (d))." ECF No. 573 at 1. Defendant contends that the application is untimely. See ECF No. 574 at 14. The court agrees.

   A.   Plaintiff's EAJA Motion was Due to be Filed by April 19, 2020

As explained above, motions for attorneys' fees and costs made pursuant to 28 U.S.C. § 2412(a), (b), and (d), are due to be filed within thirty days of "final judgment," as defined in 28 U.S.C. § 2412(d)(2)(G). 28 U.S.C. § 2412(d)(1)(B); RCFC 54(d)(1)(B)(i), (d)(2)(B)(i). "Final judgment" is defined as "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G).

The Federal Circuit issued its judgment, in which it affirmed in part and reversed in part this court's decision, on February 6, 2019. See ECF No. 560-1 (Circuit judgment). The Federal Circuit did not remand the case to this court. See id. Plaintiff subsequently filed a petition for writ of certiorari with the Supreme Court, which was denied on February 24, 2020. See Dobyns v. United States, 140 S. Ct. 1106 (2020). Plaintiff had the right, under the Supreme Court's rules, to seek rehearing within twenty-five days, or by March 20, 2020. See S. Ct. Rule 44(2). Plaintiff did not file a motion for rehearing and concedes that the Supreme Court's decision to deny his writ of certiorari was final on March 20, 2020. See ECF No. 579 at 20. Plaintiff further concedes that "[i]n the absence of the trial court's scheduling order and equitable tolling considerations, [plaintiff's] EAJA application would have been due April 19, 2020." Id. Plaintiff calculated this deadline "based on the expiration of twenty-five days for requesting rehearing of the Supreme Court's February 24, 2020 denial of [plaintiff's] writ of certiorari, with denial final as of March 20, 2020, and an additional thirty days in which to file an EAJA application." Id.

Because the Federal Circuit did not remand the case to this court, no new judgment was issued. See ECF No. 566 at 1-2 (court order explaining that because the Federal Circuit did not remand the case, the Federal Circuit's decision operated to alter

7

the court's previous judgment, and no new judgment would issue). Accordingly, judgment was final and no longer appealable in this case when the Supreme Court's denial of plaintiff's petition was final, on March 20, 2020. Therefore, plaintiff's EAJA motion was due to be filed thirty days later, by Monday, April 19, 2020. Plaintiff filed his motion on October 30, 2020, more than five months later. See ECF No. 573. As such, the motion was untimely.

> B. Neither the Court's Orders nor the Parties' Joint Status Reports Altered This Timeline

Plaintiff argues that his motion should be considered timely because he relied on this court's scheduling orders, along with communications with defendant's counsel, in deciding not to file the EAJA motion at an earlier time. See ECF No. 573 at 38-41. But neither the court's orders nor the parties' joint status reports altered the applicable timeline for plaintiff to file its EAJA motion.

The relevant history begins with the parties' May 15, 2019 joint status report. See ECF No. 563. Therein, plaintiff informed the court that he intended to appeal the Circuit's ruling to the Supreme Court, and noted his intention to file several motions, including a motion for attorneys' fees, after proceedings before the Supreme Court concluded. See id. at 2-3. On the same day, the court issued an order in which it acknowledged plaintiff's intention to file post-appeal motions and directed the parties to "file a joint status report within sixty days of the final resolution of plaintiff's request for relief from the Supreme Court, indicating their proposed schedule for further proceedings in this matter." ECF No. 564 at 1 (emphasis omitted). The order did not specifically address plaintiff's plan to file a motion for attorneys' fees, much less the appropriate time for doing so. See id. Plaintiff, in fact, was under no obligation to maintain the same plan for proceeding after the Supreme Court appeal concluded. The court ordered a joint status report to be filed in recognition of the fact that such plans are subject to change. Moreover, the order did not require the parties to wait the full sixty days before proposing additional proceedings. See id. As such, it is patently unreasonable for plaintiff to interpret the sixty-day joint status report deadline in the court's May 15, 2019 order as an implicit extension of the time for filing an EAJA motion.

Plaintiff also argues that he relied on statements from defendant's counsel in determining when his EAJA motion should be filed. See ECF No. 573 at 41. In the joint status report filed on April 24, 2020, after proceedings before the Supreme Court had concluded, plaintiff argued that defendant's counsel had agreed with him that no final judgment had issued, and thus the timeline for filing the EAJA motion had not been triggered. See ECF No. 565 at 4-6. Plaintiff stated:

> The Department of Justice committed in writing that a new judgment would
> have to be issued, and that the Court of Federal Claims would do so

8

> automatically, and therefore that no such request or clarification need be made. . . . Now, instead, the [g]overnment takes the position that [p]laintiff's EAJA application is untimely. The [g]overnment's position with respect to the timeliness of an EAJA application in response to the issuance of an amended judgment by this [c]ourt is wrong, waived, estopped, and inappropriate. Private parties and their counsel should be able to rely on representations made by the United States' attorneys.

Id. at 5-6.

Whatever the force of defendant's representations, it is clearly not empowered to speak for the court. Nor does the court believe defendant was attempting to do so when counsel stated that: "I don't think we need to ask the trial court to issue a new judgment, it will do that as a matter of course." Id. at 5. Defendant's counsel was mistaken on this procedural point. But defendant was also not responsible for ensuring that plaintiff's counsel had an accurate understanding of court procedure, or that plaintiff's counsel was taking the appropriate steps to protect his client's rights. For this reason, plaintiff's decision to rely on defendant's view, was unreasonable and ill-advised.[2] Plaintiff recognized that a motion for clarification may be needed, see ECF No. 565 at 4, but chose not to pursue that remedy for resolving any uncertainty. Any resulting disappointment is due to plaintiff's own decisions.

Finally, plaintiff argues that he relied on this court's May 20, 2020 scheduling order, which set a briefing schedule for post-appeal motions, in concluding that the EAJA motion would be timely. See ECF No. 573 at 38. The problem with this argument is two-fold. First, the court did not make any legal determination as to the timeliness of the EAJA motion in the scheduling order—it simply adopted the schedule set forth by the parties. See ECF No. 568 at 2. In addition, the May 20, 2020 scheduling order was entered after the parties brought the timeliness issue to the court's attention in the April 24, 2020 joint status report. See ECF No. 565. Defendant specifically stated, in the joint status report, that it "anticipate[s] that any questions about the timeliness of any of [p]laintiff's proposed actions will be the subject of future briefing and, accordingly, have not engaged on that issue for purposes of filing this status report." Id. at 7-8. In the court's view, given this context, it was unreasonable for plaintiff to believe that, by allowing him to file a motion for attorneys' fees and costs, the court implicitly ruled that

---

[2] There is, in fact, some evidence that plaintiff did not entirely rely on defendant's understanding of the court's procedure. On April 22, 2020, plaintiff's counsel emailed defendant's counsel and stated: "By the way, while I know you believe that Judge Campbell-Smith will automatically issue a new form of judgment, her May 1[,] 2019 Order suggested that she was just going to terminate the case without further action." See ECF No. 574 at 63.

9

defendant had no basis for its objections, even before learning what those objections were.

### C. Plaintiff's Failure to Timely File Was Not Excusable

Plaintiff argues that the court should apply the doctrine of equitable tolling in this case. See ECF No. 573 at 41-44. This court has analyzed such requests under an excusable neglect analysis. See Kansas Gas, 111 Fed. Cl. 169.

In Kansas Gas, this court held that, in cases of excusable neglect, the thirty-day EAJA deadline may be extended. See id. at 173 (considering a request to extend the time for plaintiffs to file an EAJA motion for costs pursuant to 28 U.S.C. § 2412(a)). As previously described, in its Kansas Gas decision, the court persuasively defined the standard for excusable neglect in accord with the analysis from the Supreme Court in Pioneer, 507 U.S. 380. See id. This court explained that the Supreme Court "specifically determined that the reach of the concept [of excusable neglect] 'is not limited strictly to omissions caused by circumstances beyond the control of the movant,' although it noted that 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.'" Id. (quoting Pioneer, 507 U.S. at 392). The factors the court considers, derived from Pioneer, include: the reason for the delay, prejudice to defendant, threat to efficient judicial administration, and bad faith. See id. While the court noted that in some cases "inadvertent delays" may qualify as excusable neglect, in order to make such a finding, the party seeking the extended deadline must show "something more" than a "simple mistake" or "garden-variety miscalculation." See id. at 173, 175.

Plaintiff in this case has not demonstrated that his failure to file a timely EAJA motion was excusable under this standard because he has not demonstrated anything more than a "garden-variety miscalculation." See id. at 175. It was plaintiff's own responsibility to ensure that he abided by the rules governing EAJA motions. Plaintiff's decision to rely on defendant's counsel's mistaken understanding of this court's procedure was his error. It is indeed strange, after many years of hard-fought litigation, to hear plaintiff argue that he was right to trust defendant's understanding of the case.

Furthermore, as noted above, plaintiff did not reasonably rely on the court's orders in concluding that the EAJA motion would be timely. None of the orders cited by plaintiff specifically addressed the timeliness of his EAJA motion, and plaintiff could have, at any time, moved for clarification. In fact, he suggested such a motion might be appropriate in his April 8, 2020 email to defendant's counsel, but did not file one. See ECF No. 565 at 4.

Like the court in Kansas Gas, this court "cannot find in this instance any compelling indication of 'something more' than simple mistake to warrant a finding of

10

excusable neglect." Kansas Gas, 111 Fed. Cl. at 175. Even assuming that defendant would suffer minimal prejudice by plaintiff's delay, and that plaintiff is not acting in bad faith, the protracted proceedings related to this motion have compromised the court's ability to efficiently manage this case. Thus, the three additional factors do little to counterbalance the weakness of the reason for plaintiff's delay. The court, therefore, concludes that this case falls into the category of cases in which "'inadvertence, ignorance of the rules, or mistakes construing the rules do not . . . constitute excusable neglect.'" Id. at 173 (quoting Pioneer, 507 U.S. at 392).

IV. Conclusion

Accordingly, for the foregoing reasons:

(1) Plaintiff's motion for attorneys' fees and costs, ECF No. 573, is **DENIED**; and

(2) As all matters before the court have been concluded, the clerk's office is directed to **CLOSE** this case.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge