# In the United States Court of Federal Claims

<table>
<tr><td>

JAY ANTHONY DOBYNS,

     Plaintiff,

v.

THE UNITED STATES,

     Defendant.

</td><td>

No. 08-700
Filed under seal: August 27, 2025
Reissued: September 11, 2025

</td></tr>
</table>

James B. Reed, Udall Shumway PLC, Mesa, Arizona, for plaintiff.

William J. Grimaldi, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER
### Denying Mr. Dobyns's motion for attorney fees and denying Mr. Dobyns's motion for referral

This case was filed in 2008 and concerns events that took place even longer ago than that. After litigation in this court and on appeal, the government prevailed on the case that the plaintiff, Jay Dobyns, brought, and Mr. Dobyns defeated a counterclaim from the government. Over the course of the case, Mr. Dobyns has argued, and the court has investigated, allegations of misconduct by government attorneys and officials with the Bureau of Alcohol, Tobacco, and Firearms. There are other twists and turns to the history of the case, which the court will discuss, as relevant.[1]

Mr. Dobyns now seeks attorney fees under the Equal Access to Justice Act for his success in defeating the government's counterclaim in this court. This court initially denied Mr. Dobyns's fee motion based on a timeliness argument, and the Federal Circuit reversed, finding his fee motion

---

[1] There have been at least three judges assigned to this case over the years. The case was assigned to me in 2024, after the Federal Circuit's second remand.

timely based on equitable tolling. Mr. Dobyns thus also seeks attorney fees for his successful appeal to the Federal Circuit on the equitable tolling of his original fee motion. Mr. Dobyns further requests that the court refer alleged misconduct by the government's attorneys in litigating this case to either the U.S. Attorney for the District of Columbia or to the Inspector General for the U.S. Department of Justice for criminal investigation.

Mr. Dobyns is not entitled to fees under the government-specific fee-shifting provision because the government's case on the merits was substantially justified. Under more general fee-shifting principles, Mr. Dobyns would have to show that the government engaged in bad-faith conduct when it took specific positions. Mr. Dobyns has not demonstrated that the government acted in bad faith in either of the specific positions he raises: the government's choices in pursuing a counterclaim or the parties' mutual misunderstanding regarding this court's processes. The court will therefore deny Mr. Dobyns's motion for attorney fees.

Mr. Dobyns's motion for a criminal referral is meritless. He reraises issues that have been thoroughly reviewed by this court and affirmed by the Federal Circuit. Any referral would also be futile because the allegations have been thoroughly investigated, including by the Inspector General and the DOJ Public Integrity section, and the statute of limitations has passed to prosecute any allegations related to the government attorneys' conduct. Thus, the court will deny Mr. Dobyns's motion for referral.

## I.    Background

### A.    Events leading up to Mr. Dobyns's suit

Mr. Dobyns began his career as a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in 1987. ECF No. 293 at 4.[2] From early 2001 to July 2003, as part of

---

[2] ECF No. 293 is the public version of the court's opinion deciding the case after trial. Where possible, the court cites public, redacted versions throughout this opinion. Also, the court will

an ATF operation, Mr. Dobyns posed as an undercover member of the Hells Angels Motorcycle Club. *Id*. The undercover operation was successful and ended with raids and 36 arrests. *Id*. During the trial of some of those who were arrested, Mr. Dobyns's identity was disclosed in court. *Id*. Between 2003 and 2007, Mr. Dobyns and his family received threats from members of the Hells Angels and others who were arrested as part of Mr. Dobyns's undercover work. *Id*. at 5. ATF investigated and found credible threats against Mr. Dobyns and his family. *Id*. ATF relocated Mr. Dobyns and his family. *Id.* at 5-6.

In 2006, Mr. Dobyns filed a grievance, alleging that ATF insufficiently investigated the threats and that, after relocating him, ATF did not provide enough security, putting him at risk in the new location. ECF No. 293 at 6-7. In late 2006, the ATF deputy director denied Mr. Dobyns's grievance claim. *Id*. at 7. In early 2007, ATF conducted an updated threat assessment for Mr. Dobyns and his family, concluded that there were "no current indicators of a credible threat," and designated the threat level for Mr. Dobyns as "medium." *Id*. at 7-8.

In September 2007, Mr. Dobyns entered into a settlement agreement with ATF to resolve his employment complaints. ECF No. 293 at 8-9. The settlement agreement "fully resolve[d] and settle[d] any and all issues and disputes arising out of Mr. Dobyns's employment with ATF, including, but not limited to the Agency Grievance filed by [Mr. Dobyns], [Mr. Dobyns's] complaints to the Office of Special Counsel, and his complaints to the Department of Justice's Office of Inspector General." ECF No. 25-1 at 1. ATF agreed to "comply with all laws regarding or otherwise affecting [Mr. Dobyns's] employment by the agency." *Id*. at 3-4. ATF also agreed to

---

summarize the findings of fact that are relevant to this decision, except where those findings were called into question by later reversals on appeal.

reassign Mr. Dobyns to a position in Tucson, Arizona, to review the threat assessment and to determine whether the threat level required relocating him or providing other security measures. *Id.* at 1-4. Mr. Dobyns agreed that he would "comply with Agency requirements" and would "seek permission for any outside employment, including speaking, writing, teaching or consulting." *Id.* at 2. ATF agreed that it would "handle such requests in a manner consistent with Agency practice and procedure." *Id.* Mr. Dobyns was directed to "notify the Director, Department of Justice Equal Employment Opportunity Staff, Justice Management Division, in writing" if he believed ATF had violated the agreement. *Id.* at 4.

Shortly after executing the settlement agreement, ATF transferred Mr. Dobyns to a branch in Tucson, Arizona. ECF No. 293 at 10. Mr. Dobyns sought to renew some expiring covert vehicle registrations. *Id.* ATF decided not to renew Mr. Dobyns's covert registrations, withdrew his covert identifications, and ordered that he return the documents that had been issued to him and his family. *Id.* at 10-11. Mr. Dobyns returned those documents by mid-2008. *Id.* at 11.

Later in 2008, Mr. Dobyns's house was burned down. ECF No. 293 at 11-20. Local ATF agents investigated the burning as arson. *Id.* During the investigation, ATF agents interviewed Mr. Dobyns and recorded those conversations without his knowledge and without authorization. *Id.* at 18. A later internal investigation determined that ATF's response to the arson was inadequate and that certain ATF personnel had targeted Mr. Dobyns as a suspect despite his being cleared by other evidence. *Id.* at 22-23. The report concluded that the improper targeting of Mr. Dobyns led to ATF's ignoring credible suspects and caused delays in the investigation. The report recommended that two ATF agents be fired for their involvement. *Id.*

Later investigations into ATF's handling of the arson determined that ATF failed to adequately protect Mr. Dobyns and his family after relocating him to Tucson, including by revoking his covert identifications. *Id*. at 23-24.

While Mr. Dobyns was still employed by ATF, he sought to tell the story of the time he spent as an undercover agent in the Hells Angels. In 2006, before he settled his employment claim, Mr. Dobyns executed two agreements with Fox 2000 Pictures: first to tell his story and second to serve as an expert consultant on a film about the Hells Angels. ECF No. 293 at 25-27. In May 2007, also before the settlement agreement, Mr. Dobyns entered into an agreement with Crown Publishing Group to publish a book about his time as an undercover agent. *Id*. Other ATF agents became aware of Mr. Dobyns's activities and discussed them with their superiors before the settlement agreement. *Id*. In November 2007, Mr. Dobyns appeared in two television programs where he discussed outlaw motorcycle gangs and undercover trade craft. *Id*. at 9-10 n.7. Mr. Dobyns's book was published in February 2009 and included Mr. Dobyns's official agency title. *Id*. at 26. None of Mr. Dobyns's activities regarding telling his story were approved ahead of time, in violation of standing ATF orders. *Id.*

B.     **Events since Mr. Dobyns filed this suit**

Mr. Dobyns brought this suit in 2008, alleging that ATF breached the 2007 settlement agreement by failing to provide adequate protection and threat investigation. ECF No. 1. The government counterclaimed, alleging that Mr. Dobyns abused his position with ATF by selling his story as an undercover agent for personal gain, in violation of federal law and the settlement agreement. ECF No. 35 at 29-33 [¶¶155-86]. This court held a trial, denied the government's counterclaim, and determined that, while the government had not breached the settlement agreement, its conduct had breached the covenant of good faith and fair dealing. ECF No. 293.

Following trial, in 2014, the government appealed. Mr. Dobyns filed a motion for recon-
sideration under rule 60 of the Rules of the Court of Federal Claims (RCFC), alleging that the
government's attorneys had committed fraud on the court in litigating their case. ECF No. 313.
Mr. Dobyns also cross appealed. ECF No. 299. The Federal Circuit stayed the appeals pending
resolution of Mr. Dobyns's motion for reconsideration. ECF No. 317.

This court appointed a special master—a retired judge—to examine the fraud allegations.
ECF No. 334. The court empowered the special master to investigate and issue findings of fact.
ECF No. 335 at 4-7. Mr. Dobyns asked the special master to investigate ten allegations of miscon-
duct. *See* ECF No. 348. Those allegations were that DOJ attorneys threatened their own witnesses;
ATF obstructed the arson investigation; DOJ attorneys made false statements to the court; DOJ
attorneys withheld evidence of telephone surveillance from Mr. Dobyns's attorney; government
witnesses committed perjury during depositions and at trial, and DOJ attorneys did not correct the
record; DOJ attorneys withheld internal reports from the court; ATF refused to accept the recom-
mendations of the internal reports; DOJ attorneys tampered with witnesses and evidence; and DOJ
attorneys were sending text messages to witnesses during trial to influence their testimony. *Id*. at
4-5.

In his initial report, the special master determined that most of Mr. Dobyns's allegations
could not amount to fraud on the court but that one issue required further investigation. ECF No.
348. Mr. Dobyns requested reconsideration of the special master's decision not to investigate most
of the allegations. ECF No. 371. The special master denied reconsideration, explaining again that
the allegations Mr. Dobyns raised, even if true, would not warrant setting aside the court's judg-
ment because they would not have affected the outcome of the case. ECF No. 371. After his further
investigation of the one outstanding issue, the special master issued his report and recommendation

concluding that "there could not have been fraud upon the court, or fraud by a party, which impacted the judgment in this case." ECF No. 430; *see also* ECF No. 411. The court adopted the special master's recommendations and denied another motion for reconsideration. ECF No. 479. The court explained that, while the government's conduct was below the standards expected of government officials, it did not amount to fraud on the court. *Id*. at 20. The court added that the government's conduct warranted further investigation, even though it had no impact on the case, and referred one DOJ attorney to the panel on attorney discipline to determine whether he should be disciplined based on the allegations. *Id*. at 20-21. Mr. Dobyns appealed the denial of his motion for reconsideration. ECF No. 487.

While his appeal was pending, Mr. Dobyns separately asked this court to refer the government attorneys who had worked on the case to the D.C. U.S. Attorney for criminal investigation. ECF No. 484. He requested that the court forward the documents from the special master's investigation to the U.S. Attorney for an independent evaluation of the same issues. *Id*. at 3-4. In opposition, the government noted that both the Office of Inspector General and the DOJ Public Integrity section had reviewed the allegations and had declined to pursue them as criminal matters. ECF No. 491 at 4. The court denied the motion without prejudice, noting the pending appeals to the Federal Circuit, which addressed the same issues. ECF No. 499.

Following the court's denial of Mr. Dobyns's motion for reconsideration, the Federal Circuit resumed the 2014 appeal. In its opening brief, the government dropped its appeal of its counterclaim, asking the Federal Circuit to review only this court's finding that the government breached its implied duty of good faith and fair dealing. The government prevailed on that issue, as the Federal Circuit reversed this court's decision that had granted Mr. Dobyns relief for the breach of the implied duty of good faith and fair dealing. *Dobyns v. United State*s, 915 F.3d 733

(Fed. Cir. 2019) ("*Dobyns 2019*," also available at ECF No. 560). The court of appeals affirmed this court's denial of Mr. Dobyns's motion for reconsideration on the alleged government misconduct. *Id.* at 738.

Following the Federal Circuit's mandate, Mr. Dobyns sought attorney fees for certain positions the government had taken in defending against Mr. Dobyns's claims and for defeating the government's counterclaim. ECF No. 573. This court denied his motion, holding that Mr. Dobyns had filed his application for fees under the Equal Access to Justice Act (EAJA) after the statutory deadline. ECF No. 591. Mr. Dobyns appealed. The Federal Circuit reversed and remanded, determining that the deadline was equitably tolled and that the court should have accepted Mr. Dobyns's fee motion as timely. *Dobyns v. United State*s, 101 F.4th 839, 846 (Fed. Cir. 2024) ("*Dobyns 2024*," also available at ECF No. 630).

Mr. Dobyns now has two motions pending. First, Mr. Dobyns reraises his fee request, seeking both fees associated with overcoming the government's counterclaim and fees on fees for his successful appeal. ECF No. 634. Second, Mr. Dobyns reraises his motion for a criminal referral, requesting that the court refer government attorneys for criminal investigation. ECF No. 640.

## II.    Discussion

"Except to the extent it has waived its immunity, the Government is immune from claims for attorney's fees." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) (citations omitted). EAJA creates "an exception to the general rule that plaintiffs may not recover attorney fees from the United States." *Turner v. United States*, 165 Fed. Cl. 411, 414 (2023) (citing 28 U.S.C. § 2412(d)(1)(A)); *Ruckelshaus*, 463 U.S. at 685).

To recover fees under subsection (d) of EAJA, a plaintiff must show that (1) the plaintiff is a "prevailing party"; (2) the government's position was not "substantially justified"; (3) no "special circumstances make an award unjust"; (4) the fee application is submitted within 30 days of

final judgment; and (5) the prevailing party had a net worth as an individual of less than $2,000,000 at the time the action was filed. 28 U.S.C. §§ 2412(d)(1)(A)-(B), (d)(2)(B); *see Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154, 158 (1990).

The government's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). A "position can be justified even though it is not correct, and ... it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct." *Id.* at n.2. This court is required to evaluate "the entirety of the government's conduct" to see "which way the scale tips." *Chiu v. United States*, 948 F.2d 711, 715 & n.4 (Fed. Cir. 1991). "While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 161-62.

EAJA provides an alternative path for a party to recover fees, under subsection (b), if the party establishes the government's liability "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). The court may assess fees under subsection (b) if the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," *Universal Oil Products Company v. Root Refining Company*, 328 U.S. 575, 580 (1946), or if a party shows the government acted in bad faith by "delaying or disrupting the litigation or by hampering enforcement of a court order," *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978).

The court has broad authority to fashion appropriate sanctions to address attorney misconduct that occurs in a matter before it. *See Arunachalam v. International Business Machines Corp.*, 989 F.3d 988, 997 (Fed. Cir. 2021). This power stems from the court's "inherent powers enabling it to manage its cases and courtroom effectively." *Pacific Gas & Electric Co. v. United States*, 82

Fed. Cl. 474, 480 (2008) (marks omitted); *see In re Bailey*, 182 F.3d 860, 864 (Fed. Cir. 1999) ("The United States Supreme Court and federal courts of appeals have repeatedly recognized that regulation of attorney behavior is an inherent power of any court of law and falls within the discretion of such court."). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quotation marks omitted).

**A.    Mr. Dobyns is not entitled to fees under EAJA**

**1.    Because the government was substantially justified in its litigating position, Mr. Dobyns is not entitled to fees under section 2412(d)**

To succeed under section 2412(d), a plaintiff must show that he is a prevailing party and that the government's position was not "substantially justified." The Federal Circuit in its 2024 decision noted that Mr. Dobyns cannot be awarded fees based on the theory that he succeeded on "critical findings of fact" for his affirmative case, when he lost his affirmative case. *Dobyns 2024*, 101 F.4th at 841 n.2 (Fed. Cir. 2024). Thus, the parties agree that Mr. Dobyns is a prevailing party for the counterclaim portion of the litigation and not for Mr. Dobyns's affirmative case. ECF No. 634 at 8; ECF No. 639 at 8 ("The United States withdraws its prevailing party argument" about the counterclaim.). The parties dispute whether the government's position was substantially justified.

Mr. Dobyns argues that because he successfully defeated the government's counterclaim, and the government's position on the counterclaim was not substantially justified, he is entitled to the fees for the time spent defending against the counterclaim. ECF No. 573 at 4-15. According to Mr. Dobyns, the court should evaluate the government's positions on a claim-by-claim basis, and the government's counterclaim is a severable issue. *Id*. at 4-8. The government responds that the

court should evaluate the "entirety of the Government's conduct (including pre-litigation action …)" to determine whether the government's overall position was substantially justified. ECF No. 574 at 27.

The government has the better argument. The Federal Circuit recently clarified that the substantial-justification inquiry is based on the overall record of the entire case. In *In re Secretary of the Army*, 124 F.4th 922 (Fed. Cir. 2024), a decisionmaker had limited the substantial-justification inquiry to the particular claim on which the plaintiff prevailed rather than looking at the litigation as a whole. The Federal Circuit vacated the decision, explaining that the analysis violated EAJA. *Id*. at 929. The Federal Circuit explained that EAJA requires the court to make a single substantial-justification determination for the whole case. *Id.* In coming to that conclusion, the Federal Circuit followed the Supreme Court in *Jean* and its own earlier decisions. *Id.*; *see Jean*, 496 U.S. at 159 (explaining that EAJA's "reference to 'the position of the United States' in the singular also suggests that the court need make only one finding about the justification of that position"); *Chiu*, 948 F.2d at 715 (holding that the substantial-justification inquiry applies to "the overall position of the government, both prior to and during litigation"). But, according to the Federal Circuit, the "totality of the circumstances inquiry … can be and often properly is applied to focus on the circumstances pertinent to the position taken by the government on the issue on which the claimant prevailed." *Secretary of the Army*, 124 F.4th at 932 (quotation marks and emphasis omitted).

The Federal Circuit noted a possible conflict with D.C. Circuit cases, which appear to endorse a substantial-justification inquiry into individual claims. *See Secretary of the Army*, 124 F.4th at 931-32 (discussing *Jacobs v. Schiffer*, 204 F.3d 259, 264 (D.C. Cir. 2000)). Whether or

not there is a conflict, this court is bound by the decisions of the Federal Circuit, which looks at the case as a whole to see if the government's position was substantially justified.

During oral argument, counsel for Mr. Dobyns noted that neither *Jean* nor *Secretary of the Army* involved a counterclaim by the government. ECF No. 666 at 21:23-25:22. Mr. Dobyns's argument is, effectively, that the plaintiff's affirmative case involves one government position, and the government's counterclaim constitutes a second, separate case, with a separate government position. While Mr. Dobyns is correct that neither *Jean* nor *Secretary of the Army* involved a counterclaim, *Secretary of the Army* involved multiple "distinct actions by the defendant causing distinct … injuries." 124 F.4th at 929. In determining that the court should make a single substantial-justification decision, the court relied on Congress's 1985 amendment to EAJA, which clarified that "the position" of the government is the singular position encompassing the government's actions before and arguments during the litigation. *Id*. The court reasoned that "Congress, which must be assumed to have known of that commonplace fact about litigation [that it often involves multiple issues and multiple claims], used a singular term in § 504(a)(1) rather than alternative terms that would focus on distinct subjects within the litigation whole." *Id*.

On the other hand, this court in *United Construction Company, Inc. v. United States*, 12 Cl. Ct. 514, 516 (1987), did treat a government counterclaim as separate from the affirmative case for purposes of fees under section 2412(d). The court explained that a "counterclaim is a quintessentially separate issue or phase of a case," and the court had "held the counterclaim to be a separate and distinct phase of the litigation on which plaintiff had prevailed and as to which the Government's litigating position was not substantially justified." *Id.*; *see also Chevron U.S.A. Inc. v. M & M Petroleum Services, Inc.*, 658 F.3d 948, 952 (9th Cir. 2011) (explaining that a counterclaim counts as a separate civil action for purposes of a different fee statute). But *United Construction*

relied on Federal Circuit precedent that was superseded by all of the 1985 statutory amendment, other Federal Circuit decisions, and the Supreme Court in *Jean*, all of which explain that there must be only one position of the government in a case. *United Construction*, 12 Cl. Ct. at 516 (relying on *Devine v. Sutermeister*, 733 F.2d 892, 896 (Fed. Cir. 1984), which was superseded by the 1985 amendment to EAJA and the logic of *Jean* and *Secretary of the Army*). Mr. Dobyns has not provided an example of the Federal Circuit or Supreme Court reviewing a counterclaim independently from the government's position on the plaintiff's affirmative case.

On balance, the better reading of the statute and binding precedent is that all of the government's pre-litigation and litigation stances collectively form the government's "position" for the EAJA analysis, and the court should not separate the government's position on the plaintiff's affirmative case from the government's position on a counterclaim. And Mr. Dobyns's counsel's representation at the oral argument that he "did not provide in [his] time slips all of the references to the counterclaim … it was not possible" because he was managing the case as a whole (ECF No. 666 at 78:20-80:1), shows that he treated the case as a unified whole, supporting the government's argument that the court should be looking at the government's position throughout the unified whole case. Mr. Dobyns's argument would limit the analysis to certain issues—the issues he prevailed on—not the government's overall "position."

The government points to its success on all of Mr. Dobyns's affirmative claims. Mr. Dobyns points to his success on the government's counterclaim, as well as the government's pre-litigation conduct and the government's position on equitable tolling, which the Federal Circuit disagreed with on appeal.

"EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 161-62. Taken as a whole, the government's position in this case was substantially justified.

The government successfully defeated Mr. Dobyns's affirmative claims for compensation. *Dobyns 2019*, 915 F.3d at 741. This court concluded that the government had not breached its contract with Mr. Dobyns (ECF No. 293 at 53), and the Federal Circuit affirmed that conclusion (*Dobyns 2019*, 915 F.3d at 742). The Federal Circuit reversed this court's decision on breach of implied duty of good faith and fair dealing, holding that the alleged breach was "not based on the government undermining any specific promise" in the settlement agreement. *Id*. at 741. The government therefore prevailed on all of Mr. Dobyns's merits claims.

The government also successfully litigated its position in Mr. Dobyns's rule 60 motion for reconsideration, defeating Mr. Dobyns's claims of misconduct. ECF No. 574 at 28-30. After trial, Mr. Dobyns alleged that the government had engaged in fraud before the court that impacted the court's decision. ECF No. 313. The court appointed a special master to investigate those claims, and the special master thoroughly investigated. ECF No. 348. After reviewing the trial record and documents produced by the parties during his investigation, the special master determined that "there was no fraud upon the court or by a party whatsoever." ECF No. 430 at 8. The special master concluded that there was "no evidence of fraud upon the court or fraud by a party" and recommended denying Mr. Dobyns's motion because he could not "possibly show that the judgment he obtained was affected by the behavior about which he complains." ECF No. 430 at 3. This court adopted the special master's recommendations in full (ECF No. 468), and the Federal Circuit affirmed this court's determination (*Dobyns 2019*, 915 F.3d at 737-38).

The government's successes in defeating Mr. Dobyns's claims are not alone determinative, but they support the government's argument that its position was substantially justified. *Pierce*, 487 U.S. at 569.

Mr. Dobyns successfully defeated the government's counterclaim at trial. The government's counterclaim included two counts: a violation of federal regulations when Mr. Dobyns used his official title without authorization in promoting his book and a breach of the settlement agreement when Mr. Dobyns did not seek permission to publish his book or to work with Fox on the Hells Angels movie. ECF No. 35 at 31-33 [¶¶174-186]. At trial, the court determined that the government's counterclaim lacked a factual basis, as the government was aware of Mr. Dobyns's activities related to the book and movie before executing the settlement agreement. ECF No. 293 at 47-49. The court also determined that the government's counterclaim lacked a legal basis, holding that the government relied almost exclusively on an inapposite case, in which a government employee had signed an agreement expressly forbidding the type of activity he later engaged in. ECF No. 293 at 49-52 (citing *Snepp v. United States*, 444 U.S. 507 (1980)). Later, this court characterized the government's counterclaim as "meritless." ECF No. 591 at 2.

But the trial took place in 2013. After that, on appeal, although the government initially stated that it would pursue the counterclaim (Government's Docketing Statement, *Dobyns 2019*, No. 15-5020, ECF No. 10 at 2 (Fed. Cir., filed Dec. 1, 2014)), Mr. Dobyns did not have to respond to any further argument about the counterclaim. Instead, when the government ultimately filed an appeal brief, it did not appeal its loss on the counterclaim, even as it appealed the court's decision on Mr. Dobyns's breach. Government's Opening Brief, *Dobyns 2019*, No. 15-5020, ECF No. 47

at 2 n.1 (Fed. Cir., filed May 3, 2017) ("Defendant-appellant's December 1, 2014 Docketing State-ment raised as an issue for appeal whether the trial court erred in rejecting the United States' counterclaim. ECF No. 10. Defendant-appellant is no longer raising that issue on appeal.")

Mr. Dobyns's counsel estimates that about twenty percent of the time he spent on the law-suit was attributable to defending against the government's counterclaim. ECF No. 573 at 38. The government argues that the time records show that Mr. Dobyns's counsel actually spent much less time on the counterclaim. ECF No. 639 at 9 & n.1, 16-17. Regardless, both parties agree that the counterclaim represented a fairly small fraction of the overall time spent on the case. *See Athey v. United States*, No. 2020-2291, 2021 WL 4282593, at *5 (Fed. Cir. Sept. 21, 2021) (upholding the trial court's determination that the government was substantially justified when it won on multiple key issues). Even though the government was not justified in its position on the counterclaim alone, that issue was a smaller issue, and the government appropriately dropped it after losing at trial.

Meanwhile, once the government no longer pursued an argument related to its counterclaim after 2013, it was successful in every merits claim it litigated over the next seven years, as well as all the attorney-conduct claims it litigated. This case has continued on for the better part of two decades, and most of that delay resulted from Mr. Dobyns's decisions to repeatedly pursue issues after losing those issues multiple times. *See* ECF Nos. 313, 337, 352, 447, 453, 467, 468, 484, 485, 640, 646 (all Mr. Dobyns raising the same or similar attorney conduct).

Mr. Dobyns also points to ATF's pre-litigation conduct. ECF No. 573 at 14. Mr. Dobyns is correct that the substantial-justification inquiry includes the government's pre-litigation con-duct, including the conduct of the relevant agency. *See Blakley v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010); *Secretary of the Army*, 124 F.4th at 930. Mr. Dobyns argues that ATF's

responses to the arson at his house and ATF's other threats represent relevant pre-litigation activities, for which the government was not substantially justified. ECF No 574 at 30-32. The government argues that ATF dutifully implemented the settlement agreement, promoting Mr. Dobyns, paying him $373,000, reassigning him to a new position in Tucson, and reviewing his threat assessment. *Id.*; ECF No. 293 at 8, 11.

The agency's pre-litigation behavior was reasonable at least as it was relevant to this litigation. The agency implemented the settlement agreement, providing Mr. Dobyns with the benefits the parties agreed to. As the Federal Circuit explained, "the alleged grievances that led to the 2007 agreement were based on ATF's security failures relating to Dobyns' safety." *Dobyns 2019*, 915 F.3d at 740. But, the court noted, "there were no future promises regarding how the government would ensure the safety of Dobyns and his family" beyond addressing any increased threat level. *Id.* According to the court of appeals, there was no claim that the government breached the provision requiring the government to address any increased threat level. *Id.* In other words, while ATF mismanaged its arson investigation, the government successfully defended itself on the merits of Mr. Dobyns's case. Because the arson investigation was part of Mr. Dobyns's affirmative case, the government's ultimate win on that issue outweighs the unreasonable aspects of the government's pre-litigation conduct. *See Baldi Brothers Constructors v. United States*, 52 Fed. Cl. 78, 82 (2002) ("[I]n appropriate circumstances, the court would not be disinclined to find that the Government's position during litigation outweighed its prelitigation conduct so as to support a finding that it acted with substantial justification.").

Mr. Dobyns also argues that the government had no reasonable basis for opposing his original EAJA application on timeliness grounds. ECF No. 641 at 7-10. According to Mr. Dobyns, the government intentionally misled him into missing the deadline to file his fee motion and then

attempted to use that missed deadline to get the court to dismiss his fee motion. *Id*. But the government's actions were not intentionally misleading and were at least neutral with respect to the missed deadline.

By email, counsel for the government and for Mr. Dobyns were discussing the next steps after the Supreme Court denied cert. In response to a question from Mr. Dobyns's counsel about his deadline to move for EAJA fees, government counsel stated, "I don't think we need ask the trial court to issue a new judgment, it will do that as a matter of course." ECF No. 574 at App3; *Dobyns 2024*, 101 F.4th at 844. The Federal Circuit held that Mr. Dobyns reasonably relied on that representation when the court did not issue a new judgment and Mr. Dobyns failed to meet the deadline to file a fee motion. Thus, the deadline was equitably tolled. *Id.* at 846.

But the government's mistake was not intentional. Mr. Dobyns argued to this court that he missed the deadline because of the parties' mutual mistake, not because of his being misled. ECF No. 573 at 36. This court determined that government counsel did not intentionally mislead Mr. Dobyns and instead that Mr. Dobyns relied on "defendant's counsel's *mistaken* understanding of this court's procedure." ECF No. 591 at 10 (emphasis added). In his appeal brief, Mr. Dobyns argued that the parties were mutually mistaken regarding the EAJA deadlines, and "where mutual mistake exists on the part of both the federal government and the plaintiff, equitable tolling applies to EAJA claims." Dobyns's Opening Brief, *Dobyns 2024*, No. 21-2309, ECF No. 36 at 47 (Fed. Cir., filed Apr. 6, 2022). The Federal Circuit explained that it was not undermining the mistake finding but instead holding that, "to the extent that the Claims Court required Mr. Dobyns to show that the government had intentionally misled him, this would be incorrect." *Dobyns 2024*, 101 F.4th at 846. Thus, this court and the court of appeals adopted Mr. Dobyns's position that the government's misstatement was not intentional but a mistake.

Mr. Dobyns cannot now change his position, arguing that he was intentionally misled, after this court and the Federal Circuit adopted his position; that is invited error. *Key Pharmaceuticals v. Hercon Laboratories Corp.*, 161 F.3d 709, 714-15 (Fed. Cir. 1998) ("The impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its face, and litigants hardly need warning not to engage in such conduct." ); *Cordis Corp. v. Medtronic AVE Inc.*, 511 F.3d 1157, 1172 (Fed. Cir. 2008) (explaining that, under the doctrine of invited error, a party ordinarily cannot dispute on appeal a jury instruction that the party itself proposed). Thus, government counsel's statement was a mistake, and that fact has been decided for purposes of this case.

It was thus appropriate, after the government realized its mistake and the court did not issue a revised judgment, for the government to argue that Mr. Dobyns had missed a deadline that the government believed could not be tolled. ECF No. 574 at 10. While the Federal Circuit later determined that EAJA does allow for equitable tolling, it did not determine that the government intentionally misled Mr. Dobyns. *See Dobyns 2024*, 101 F.4th at 846. Thus, although government counsel misled Mr. Dobyns, that fact does not weigh in either party's favor. And it certainly does not undermine the substantial justification of the government's overall position in this case.

In sum, while neither party prevailed on every issue in this litigation, the substantial-justification inquiry does not require the government to have prevailed on every issue. The government prevailed on its affirmative claims and acted reasonably in most of its other litigation conduct. While the government lost on its counterclaim, it dropped that counterclaim rather than unreasonably pursuing it on appeal. Thus, even when focusing on the "circumstances pertinent to the position taken by the government on" that particular issue, *Secretary of the Army*, 124 F.4th at 932 (quotation marks omitted), the counterclaim issue does not heavily favor Mr. Dobyns. And while

ATF's arson investigation was unreasonable, the Federal Circuit has already determined that the investigation did not amount to a breach of any duty, meaning that it does not outweigh the merits that favor the government. Finally, the government's behavior in the fees litigation does not tilt the balance in favor of either party. Indeed, it would be odd for Mr. Dobyns to be entitled to fees based on the government's overall position in this case, when Mr. Dobyns was the plaintiff in this case and wound up with no damages. On balance, the government's overall position in the litigation was substantially justified, precluding the court from awarding EAJA fees under section 2412(d).

### 2.     Mr. Dobyns is not entitled to costs under section 2412(a)

For the same reasons, Mr. Dobyns was not the prevailing party in the overall litigation. Thus, he is not entitled to costs under section 2412(a).

### 3.     The government did not act in bad faith under section 2412(b)

Apart from the substantial-justification analysis, Mr. Dobyns argues that he is entitled to fees under section 2412(b) for both the government's counterclaim and for his successful fees appeal. He argues that the government's counterclaim was meritless, the government pursued it to distract from Mr. Dobyns's claim, and the statements made by the government attorney were intended to mislead Mr. Dobyns into missing the deadline to file his EAJA application. ECF No. 634 at 17, 25-28. The government responds that it did not act in bad faith in litigating the counterclaim or the fees appeal. ECF No. 574 at 34-35; ECF No. 639 at 14-16. Mr. Dobyns has not demonstrated that the government acted in bad faith, and he is not entitled to fees under section 2412(b).

There is a high bar for establishing that a party acted in bad faith. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-67 (1980). Courts disagree on the way to evaluate when a claim clears that bar. Most courts require a showing both that the government took a meritless position

and that it was with an improper purpose. *See Ibrahim v. U.S. Department of Homeland Security,* 912 F.3d 1147, 1180 (9th Cir. 2019); *Griffin Industries Inc. v. EPA,* 640 F.3d 682, 685-86 (6th Cir. 2011); *FTC v. Kuykendall,* 466 F.3d 1149, 1152 (10th Cir. 2006); *Kerin v. United States Postal Service,* 218 F.3d 185, 190 (2d Cir. 2000). Other courts apply a less mechanical but no less stringent a test. *See Gate Guard Services, L.P. v. Perez,* 792 F.3d 554, 561 (5th Cir. 2015) ("These conjunctive tests appear to lack the flexibility equity requires and overlook that the common-law rule allows for attorneys' fees disjunctively whenever a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." (citation omitted)); *Stive v. United States,* 366 F.3d 520, 521 (7th Cir. 2004); *McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger,* 280 F.3d 26, 42 (1st Cir. 2002). This court has applied the first test. *Heger v. United States,* 114 Fed. Cl. 204, 211 (2014). But regardless of which test applies, the Federal Circuit requires "well-nigh irrefragable proof" to find bad faith on the part of government officials. *Am-Pro Protective Agency, Inc. v. United States,* 281 F.3d 1234, 1239-40 (Fed. Cir. 2002) (quotation marks omitted).

Mr. Dobyns argues that, because the government eventually abandoned its counterclaim, the counterclaim was frivolous and must have been raised in bad faith, to drain Mr. Dobyns's resources. ECF No. 573 at 18-20; ECF No. 641 at 15-18. Mr. Dobyns's argument does not meet either standard for bad faith. Although this court found the counterclaim meritless, it was not frivolous. The counterclaim relied on a Supreme Court decision, *Snepp,* 444 U.S. 507, which addressed a CIA agent's attempt to publish a book based on his experiences as an agent. This court held that the government had not met its burden of proof and that *Snepp* was inapposite because the agreement in that case expressly forbade the type of activity the agent engaged in. ECF No. 293 at 47-52. The court concluded, "[W]hile this matter might have been handled better by all concerned it would appear that defendant's counterclaim, nevertheless, suffers from numerous

flaws—both factual and legal." *Id.* at 52. The court's conclusion does not indicate that the judge found bad faith, only that the government—as well as Mr. Dobyns—had raised flawed arguments.

The government's aggressive positions do not indicate bad faith, and Mr. Dobyns has not shown any evidence of bad faith outside the fact that the government's positions were not meritorious. While a lack of merit is necessary to find bad faith, it is not sufficient. *See Bregstone v. United States*, 4 Cl. Ct. 507, 514 (1984) ("Lack of merit is not in and of itself sufficient to support a finding of bad faith but, when considered along with their other actions, cannot be excused."). The government abandoned its counterclaim on appeal. While Mr. Dobyns argues that abandoning the counterclaim shows bad faith in the choice to bring it in the first place (ECF No. 641 at 17), the alternative can also be true, that a party's abandoning an argument after losing shows reasonableness. If the government's goal had been to waste Mr. Dobyns's time and resources, it could have continued to pursue its counterclaim after trial. Further, if the government were subject to an adverse inference merely from making a decision not to appeal, it would be forced into appealing many more trial court decisions, wasting taxpayer dollars, for no reason other than trying not to appear unreasonable. That is thankfully not the world we currently live in.

Mr. Dobyns also argues that he is entitled to attorney fees for the fee appeal, where he argues that the government's argument was made in bad faith. As with the 2412(d) argument, Mr. Dobyns argues that the government intentionally misled him into missing the deadline to file his EAJA application. ECF No. 641 at 18. As discussed above, in part II.A.1, the record, addressed by the Federal Circuit, shows that the government attorney was mistaken and did not intentionally mislead Mr. Dobyns's attorney about the timing of the fee motion. The government's choice to defend its position on the fee motion was not taken in bad faith; the government simply argued the

law as it understood the law once the government realized the parties had made a mutual mistake about the court's procedure.

4.      **Mr. Dobyns has abandoned his arguments relating to the Arizona statute from his original EAJA motion**

In his original EAJA motion, Mr. Dobyns argues that no federal statute governs contract fees, and the court should therefore turn to Arizona law to fill in the gaps in federal law. ECF No. 573 at 15-26. The government responds that Arizona law does not apply because EAJA establishes the grounds for attorney fees claims against the United States. ECF No. 574 at 32-34. During oral argument, Mr. Dobyns conceded that the Arizona statutes are inapplicable to his case. ECF No. 666 at 9:2-11. Because Mr. Dobyns has dropped this argument, the court need not address the applicability of Arizona law.

5.      **Fees on fees require the party to be successful in obtaining fees in the first instance**

Mr. Dobyns argues that he is entitled to fees on fees for successfully litigating equitable tolling and his entitlement to fees under EAJA. ECF No. 634 at 16-34. Mr. Dobyns argues that "[e]ntitlement to the fees due to the EAJA appeal is automatic." ECF No. 641 at 7. The government responds that any fee-on-fee award requires that the party seeking fees be awarded some amount of fees in its principal case. ECF No. 639 at 9-10.

The government is correct that fees for fee litigation are not available if the applicant does not receive fees in its principal case. *See UCP International Company Ltd. v. Balsam Brands Inc.*, 785 F. App'x 849, 853 (Fed. Cir. 2019) (citing *Jean*, 496 U.S. at 163 n.10). Here, Mr. Dobyns is not entitled to fees for his success in tolling the statute of limitations because he has not been awarded fees for any of his litigation in his principal case.

**B.      Mr. Dobyns's motion for criminal referral is meritless**

Mr. Dobyns asks the court to refer several government employees, including ATF agents and DOJ attorneys, to the D.C. U.S. Attorney and to the DOJ's Inspector General for criminal investigation of their actions. ECF No. 640. The government responds that the referral motion is actually a motion for sanctions, that it is meritless because this court already addressed a sanctions motion and thoroughly investigated the alleged misconduct, and that any investigation would be futile because the statute of limitations for the alleged crimes has run. ECF No. 642.

Mr. Dobyns's motion is meritless. He reraises issues that have been thoroughly reviewed and denied by this court and affirmed by the Federal Circuit; rather than accepting that the court has made a decision, he casts aspersions on the judge who made the decision. Further, any referral would be futile because the allegations have been thoroughly investigated, including by the Inspector General and the DOJ Public Integrity section, and the statute of limitations has passed to prosecute any allegations related to the government attorneys' conduct. The request Mr. Dobyns makes is barred by the law of the case and the mandate rule. The court understands that Mr. Dobyns and his counsel are frustrated by the actions that they believe DOJ and ATF took throughout this litigation, but that does not give them freedom to ignore the facts that have already been established in this case. At this time, the court does not intend to issue an order to show cause why Mr. Dobyns's counsel should not be sanctioned for repeatedly raising the same issues and arguments after repeatedly losing, but it will consider such an order in the future if Mr. Dobyns's counsel continues to reraise the same arguments he has lost.

**1.      The allegations of misconduct have been fully litigated before this court and are barred by the mandate rule and law of the case**

Mr. Dobyns argues that there was criminal misconduct by ATF and DOJ personnel in this case, and that misconduct has not been addressed. ECF Nos. 640, 646. The government argues that

alleged misconduct has been litigated to finality in this case, and this court is barred from reviewing it again by the mandate rule and the law of the case doctrine. ECF No. 642. The government is correct. Each of Mr. Dobyns's allegations has been investigated by this court, this court has made factual and legal findings that have been upheld by the Federal Circuit, and the allegations have been referred to multiple other bodies for review.

The mandate rule provides that "issues actually decided—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). "[T]he mandate rule precludes reconsideration of any issue within the scope of the judgment appealed from—not merely those issues actually raised." *Amado v. Microsoft Corporation*, 517 F.3d 1353, 1360 (Fed. Cir. 2008); *see Doe v. United States*, 463 F.3d 1314, 1327 (Fed. Cir. 2006) ("[T]he mandate rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived." (quotation marks omitted)).

Courts have also long applied a corollary of the mandate rule, the law of the case doctrine. *See Messinger v. Anderson*, 225 U.S. 436, 444 (1912). Under that doctrine, "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." *Suel v. Secretary of Health & Human Services*, 192 F.3d 981, 985 (Fed. Cir. 1999). The doctrine "encourages both finality and efficiency in the judicial process by preventing relitigation of already-settled issues." *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014). Applying the law of the case "ensure[s] judicial efficiency and prevent[s] the possibility of endless litigation." *Central Soya Company v. Geo. A. Hormel & Company*, 723 F.2d 1573, 1580 (Fed.Cir.1983); *see also Roberts v. Cooper*, 61 U.S. 467, 481 (1857) ("[T]here would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions,

or speculate [on] chances from changes in its members."); *United States v. Turtle Mountain Band of Chippewa Indians*, 222 Ct. Cl. 1 (1979) ("No litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time."). The Federal Circuit has emphasized "the importance of applying [the] law of the case doctrine in protracted litigation." *Suel*, 192 F.3d at 985.

Exceptional circumstances allow a court to depart from the mandate rule or law of the case doctrine when there is "the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice." *Intergraph Corporation v. Intel Corporation*, 253 F.3d 695, 698 (Fed. Cir. 2001). The party supporting such a circumstance has a "heavy burden." *Branning v. United States*, 784 F.2d 361, 363 (Fed. Cir. 1986).

Mr. Dobyns's request for the court to investigate alleged misconduct has a long history in this case. After trial, Mr. Dobyns filed a motion for reconsideration, alleging that the government had committed fraud on the court. ECF No. 313. This court treated Mr. Dobyns's serious allegations with the gravity that alleged criminal conduct before the court deserves. It vacated the judgment and requested that the Federal Circuit stay the pending appeals so that the allegations could be investigated. ECF No. 300. The court then appointed a special master, with expenses paid by the court, to investigate the fraud allegations. ECF Nos. 334, 335.

The special master reviewed each of the allegations. ECF No. 348 at 11. In evaluating some allegations, the special master did not determine whether the conduct occurred but only that if it did, the conduct was not severe enough to set aside the judgment. *Id*. The special master found that Mr. Dobyns offered "no support for his far-fetched allegations" that Mr. Dobyns's counsel was harassed. *Id*. The special master investigated the alleged threats to a witness. He found that, rather

than covering up the threats, the government "made a decision, based on legal principles and strategic judgments, that there was no reason to bring the alleged threats to the attention of the court." ECF No. 411 at 8. Ultimately, the special master found that there was "no evidence of fraud upon the court or fraud by a party." ECF 430 at 1. This court then denied Mr. Dobyns's motion for reconsideration of the special master's findings. ECF No. 481.

In his renewed motion, Mr. Dobyns does not invoke any of the exceptions to the law of the case; instead, he argues that the investigations that took place were insufficient. ECF No. 646 at 8-10. Mr. Dobyns argues that the scope of the court's earlier decisions does not encompass his current requests. ECF No. 646 at 8-10. Mr. Dobyns is incorrect. The special master's initial decision discussed each of Mr. Dobyns's current allegations. ECF No. 348. This court's adoption of that decision, and the Federal Circuit's affirmance, also encompass each of those allegations.

Mr. Dobyns's motion represents the precise situation the law of the case doctrine is designed to avoid. Mr. Dobyns asks the court to go back and overwrite the special master's decision, as reviewed by this court and the court of appeals, not because the law has changed, or new evidence has emerged, but because he is unhappy with the result. Mr. Dobyns asked for and got an investigation into whether DOJ attorneys threatened their own witnesses. ECF No. 337 at 7. He now seeks a criminal referral on whether DOJ attorneys threatened their own witnesses. ECF No. 640 at 8, 13-14. He asked for and got an investigation into whether ATF obstructed the arson investigation. ECF No. 337 at 7. He now seeks a criminal referral on the same thing. ECF No. 640 at 8, 22-25. He asked for and got an investigation into whether DOJ attorneys made false statements to the court. ECF No. 337 at 7. He now seeks a criminal referral on DOJ attorneys' same alleged false statements. ECF No. 640 at 8. The same is true for the investigation into whether

DOJ attorneys withheld evidence of telephone surveillance from Mr. Dobyns's attorney; government witnesses committed perjury during depositions and at trial, and DOJ attorneys did not correct the record; DOJ attorneys withheld internal reports from the court; ATF refused to accept the recommendations of the internal reports; DOJ attorneys tampered with witnesses and evidence; and DOJ attorneys were sending text messages to witnesses during trial to influence their testimony. *Compare* ECF No. 337 at 7-9 *with* ECF No. 640 at 9-10, 25-29. Mr. Dobyns argues, without citation, that DOJ tried to endanger his family members (ECF No. 640 at 30-31), but he states at the same time that this court already granted an emergency motion on that issue (*id.* at 31).

Because the special master's decision and this court's decisions encompass all of the issues in Mr. Dobyns's motion, and Mr. Dobyns does not demonstrate extraordinary circumstances, the court will not revisit its earlier decisions.

Beyond the law of the case, the mandate rule also bars Mr. Dobyns's request. Following this court's denial of his motion for reconsideration, Mr. Dobyns cross appealed the decision to the Federal Circuit. ECF No. 487. Mr. Dobyns's cross appeal encompassed all of the orders and opinions that the special master issued, which the court adopted. *Id*. (listing ECF Nos. 411, 422, 423, 430, 463, 464, 479, 480, and 482 as the orders and opinions included in the appeal). The Federal Circuit held that Mr. Dobyns had not sought sanctions for the alleged misconduct, and that he "offers no reason why granting his Rule 60 motion would not be an empty exercise, and thus relief is not warranted here." *Dobyns 2019*, 915 F.3d at 738.

The mandate rule encompasses all issues within the scope of the judgment. *Haggart*, 943 F.3d at 951. Here, that scope covers Mr. Dobyns's criminal allegations. Mr. Dobyns raised the allegations of misconduct, and the Federal Circuit affirmed this court's judgment. The Federal Circuit's order did not reserve or remand any part of the misconduct allegations to this court for

further proceedings. *Dobyns 2019*, 915 F.3d at 742-43. As with the law of the case doctrine, Mr. Dobyns does not invoke any exceptions to the mandate rule. Because the Federal Circuit already addressed the alleged misconduct in its decision, this court is barred from reviewing the issue again.

Finally, as Mr. Dobyns acknowledges in his reply, the allegations he raises have already been sent to, and reviewed by, DOJ's Office of the Deputy Attorney General, the Office of Inspector General, the Public Integrity Section, and the Office of Professional Responsibility. ECF No. 646 at 10-18; *see* ECF No. 293 at 53 n.73 ("[T]he court will direct the Clerk of Court to serve a copy of this opinion upon the Attorney General of the United States, the Office of Professional Responsibility for the Department of Justice, and the Office of the Inspector General of the Department of Justice. The transmittal letter should call attention to this opinion, and, in particular, to footnote 25 thereof."); ECF No. 294; ECF No. 298 (placing filing restrictions on the DOJ attorneys involved with the trial); ECF No. 463 at 20 ("[T]he court makes a referral to the Standing Panel on Attorney Discipline, under Rule 83.2, to investigate what, if any, discipline is warranted for the alleged misconduct of [government counsel]."). Any referral motion would therefore be duplicative of the investigations that have already taken place.

### 2.  Mr. Dobyns's speculations do not support a criminal referral

Mr. Dobyns dedicates most of his renewed motion to a series of speculative assertions. He asserts that DOJ attorneys "almost certainly knew … perjurious deposition testimony" occurred, and that evidence was tampered with "almost certainly at the encouragement of [DOJ counsel]". ECF No. 640 at 9 [¶5], at 10 [¶8]. Similarly, Mr. Dobyns asserts that a witness looked at DOJ counsel before answering questions on the stand and argues, without proof, that DOJ was messaging the witness who was giving testimony. *Id.* at 10 [¶9]. The motion includes many other inferences as well. *See, e.g.*, ECF No. 640 at 14 n.7 (speculating that "DOJ obviously withheld or

destroyed key documents."), 23 (referencing "an almost certainly false declaration"), 24 (hypothesizing that DOJ "would have learned of [ATF's] witness tampering and obstruction" in preparing a witness), 24-25 (speculating that an attorney who was disqualified from participating in the case had participated anyway); 24-25 ("This is compounded by [DOJ] making false statements to [this court] and to Office of Professional Responsibility investigators"), 25 ("Presumably emails exist between or among [DOJ and ATF personnel] that establish … [ATF's] intention to stop [the] reopening of the investigation"), 29 ("At Trial, after each question, [the witness] looked to [DOJ counsel] before giving an answer, apparently for guidance"), 30 ("There is an obvious explanation for these events. … [DOJ trial counsel] were signaling to a disabled witness to look to defense counsel's table for visual cues regarding answers during trial testimony. … If [the witness's] phone record show no calls received during his testimony ... and if [DOJ counsel's] phone records show calls made at that time, then DOJ supplied a phone to [the witness] and called it, to coach him on the witness stand."), 33 (noting "almost certain" consultation with a DOJ attorney); ECF No. 646 at 7 ("The only motivation for [conducting surveillance] would be to protect attorneys under investigation."). And he raises suspicions because criminal defense attorneys defended the depositions of DOJ attorneys (ECF No. 640 at 15 & n.10), when Mr. Dobyns himself is repeatedly trying to have those DOJ attorneys criminally prosecuted.

Neither this judge nor a reviewing U.S. Attorney has the benefit of having been present during the trial. Many of Mr. Dobyns's allegations deal with events that took place more than a decade ago. Particularly when all of the allegations have already been investigated, Mr. Dobyns's speculations and inferences are simply not enough for the court to put its weight behind a criminal referral.

### 3. Mr. Dobyns's motion is also futile because the criminal allegations it raises are barred by the statute of limitations

The conduct that Mr. Dobyns alleges occurred between 2012 and 2016. ECF No. 646. He identifies six criminal statutes. ECF No. 640 at 11. The government argues that the statute of limitations for each of those criminal statutes is five years. ECF No. 642 at 16 (citing 18 U.S.C. 3282 (providing that the statute of limitations for non-capital offenses is 5 years)). The most recent crime that Mr. Dobyns alleges is the stalking of his attorney in 2016, eight years before he filed this motion, which he ties to a broader conspiracy related to the case. ECF No. 646 at 6. In his reply, Mr. Dobyns acknowledges that most of his requests are barred by the statute of limitations but argues that the stalking of Mr. Dobyns's counsel should be investigated further because, although the last overt act occurred in 2016, there could be an ongoing coverup that is ripe for investigation. ECF No. 646 at 5-8.

Mr. Dobyns could have requested that the U.S. Attorney investigate these allegations at any point during the litigation. *See* ECF No. 666 at 44:6-46:17. He did not need the court's intervention to ask the U.S. Attorney to investigate alleged crimes. He brought the motion in 2024. He tries to save his motion through allegations of an ongoing coverup of the conspiracy. ECF No. 646 at 5-8. But because all of the specific allegations Mr. Dobyns raises occurred more than five years ago, referring the allegations for criminal investigation would be futile.

### 4. Mr. Dobyns's counsel's repeated reraising of issues before the court is improper

As discussed already, this case has a long history; the complaint was filed in 2008, and a trial on those issues was held in 2013. Mr. Dobyns first raised the issues in his referral motion following trial, and as discussed, the court investigated those allegations at the time Mr. Dobyns raised them. Mr. Dobyns has argued the same or similar issues before the court repeatedly. *See* ECF Nos. 313, 337, 352, 447, 453, 467, 468, 484, 485, 640, 646. The court has repeatedly reviewed

those issues and issued orders and opinions discussing them. *See* ECF Nos. 330 and 334 (appointing a special master to investigate the allegations); 348 (special master's order determining the scope of his investigation); 371 (special master's order denying Mr. Dobyns's motion for reconsideration of the scope of his investigation); 430 (special master's final report and recommendation finding no evidence of fraud or behavior that affected the outcome of the trial); 479 (court opinion adopting the special master's recommendation and denying Mr. Dobyns's motion for reconsideration of the trial opinion); 480 (denying Mr. Dobyns's motion for reconsideration of the court's order lifting restrictions on DOJ attorneys); 481 (denying Mr. Dobyns's motion for reconsideration of the court's order adopting the special master's recommendations); 499 (denying Mr. Dobyns's first motion for referral due to pending appeal); *Dobyns 2019*, 915 F.3d 733 (Federal Circuit opinion denying Mr. Dobyns's appeal of the decision adopting the special master's recommendation). Despite Mr. Dobyns's attempt to recharacterize his renewed request, the issues are the same as those the court has ruled on repeatedly.

As well as reraising the same issue several times, Mr. Dobyns's attacks on Judge Campbell-Smith throughout the case concern the court. When Judge Campbell-Smith took over the case from Judge Allegra, Mr. Dobyns filed a motion objecting to the transfer of the case. ECF No. 409. After Judge Campbell-Smith denied his motion (ECF No. 410), explaining that Judge Allegra had retired because of a medical emergency, Mr. Dobyns filed a motion for reconsideration of her order. ECF No 620 (public redacted copy of ECF No. 425). In that motion for reconsideration, Mr. Dobyns argued that Judge Campbell-Smith lacked the experience to replace Judge Allegra. ECF No. 620 at 13-14. Now, in his renewed referral motion, Mr. Dobyns argues that Judge Campbell-Smith "failed to exercise this Court's duty to use its inherent power to police its courtroom against attorney misconduct." ECF No. 640 at 40. He also asserts that Judge Campbell-Smith "claimed, without

basis, that this Court lacked jurisdiction." ECF No. 646 at 2. Notably, this court likely did lack jurisdiction when the issue Mr. Dobyns was raising was, at the same time, pending on appeal at the Federal Circuit. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Mr. Dobyns was disappointed by the emergency transfer of his case to a judge whom he felt was less sympathetic to his position, but the court will not countenance accusations that a judge, exercising her independent judgment in a case, was somehow failing to do her job.

Attorneys who appear before this court have a duty to conduct themselves in line with their ethical responsibilities and as officers of the court. These responsibilities include a duty to only bring nonfrivolous claims, ABA Model Rules of Professional Conduct Rule 3.1, and a responsibility to demonstrate respect for the legal system and the judges and other lawyers who serve it, ABA Rules of Professional Conduct Rule Preamble. Mr. Dobyns's counsel's conduct in repeatedly reraising issues and casting aspersions on the court's judges concerns the court. Given the number of times that Mr. Dobyns has raised and reraised the same conduct by the same government attorneys, the court believes a motion for reconsideration of this decision on attorney conduct would not be taken in good faith; Mr. Dobyns may, however, appeal this decision.

### III.    Conclusion

For these reasons, this court **denies** Mr. Dobyns's motion for fees and **denies** Mr. Dobyns's motion for a criminal referral. The clerk of the court shall enter judgment accordingly. This is a final, appealable order.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge